# CALDER ET AL. *v.* JONES

No. 82–1401.   Argued November 8, 1983—Decided March 20, 1984

Rehnquist, J., delivered the opinion for a unanimous Court.

*John G. Kester* argued the cause for petitioners. With him on the briefs was *Aubrey M. Daniel III.*

*Paul S. Ablon* argued the cause for respondent. With him on the brief were *Stephen S. Monroe* and *Richard P. Towne.*\*

Justice Rehnquist delivered the opinion of the Court.

Respondent Shirley Jones brought suit in California Superior Court claiming that she had been libeled in an article written and edited by petitioners in Florida. The article was published in a national magazine with a large circulation in California. Petitioners were served with process by mail in Florida and caused special appearances to be entered on their behalf, moving to quash the service of process for lack of per-

---

*Briefs of *amici curiae* urging reversal were filed for the Association of American Publishers, Inc., by *R. Bruce Rich;* for the Authors League of America, Inc., by *Irwin Karp;* and for the Reporters Committee for Freedom of the Press et al. by *George R. Clark, Peter C. Gould, Barry D. Umansky, Harvey Lipton, Robert C. Lobdell, W. Terry Maguire, Robert D. Sack, Bruce W. Sanford, J. Laurent Scharff,* and *Richard M. Schmidt, Jr.*

sonal jurisdiction. The Superior Court granted the motion on the ground that First Amendment concerns weighed against an assertion of jurisdiction otherwise proper under the Due Process Clause. The California Court of Appeal reversed, rejecting the suggestion that First Amendment considerations enter into the jurisdictional analysis. We now affirm.

Respondent lives and works in California. She and her husband brought this suit against the National Enquirer, Inc., its local distributing company, and petitioners for libel, invasion of privacy, and intentional infliction of emotional harm.[1] The Enquirer is a Florida corporation with its principal place of business in Florida. It publishes a national weekly newspaper with a total circulation of over 5 million. About 600,000 of those copies, almost twice the level of the next highest State, are sold in California.[2] Respondent's and her husband's claims were based on an article that appeared in the Enquirer's October 9, 1979, issue. Both the Enquirer and the distributing company answered the complaint and made no objection to the jurisdiction of the California court.

Petitioner South is a reporter employed by the Enquirer. He is a resident of Florida, though he frequently travels to California on business.[3] South wrote the first draft of the challenged article, and his byline appeared on it. He did most of his research in Florida, relying on phone calls to sources in California for the information contained in the article.[4] Shortly before publication, South called respondent's

---

[1] Respondent's husband subsequently filed a voluntary dismissal of his complaint.

[2] A geographic analysis of the total paid circulation for the September 18, 1979, issue of the Enquirer showed total sales, national and international, of 5,292,200. Sales in California were 604,431. The State with the next highest total was New York, with 316,911. App. 39–41.

[3] South stated that during a 4-year period he visited California more than 20 times. *Id.*, at 32. A friend estimated that he came to California from 6 to 12 times each year. *Id.*, at 66.

[4] The Superior Court found that South made at least one trip to California in connection with the article. South hotly disputes this finding, claim-

home and read to her husband a draft of the article so as to elicit his comments upon it. Aside from his frequent trips and phone calls, South has no other relevant contacts with California.

Petitioner Calder is also a Florida resident. He has been to California only twice—once, on a pleasure trip, prior to the publication of the article and once after to testify in an unrelated trial. Calder is president and editor of the Enquirer. He "oversee[s] just about every function of the Enquirer." App. 24. He reviewed and approved the initial evaluation of the subject of the article and edited it in its final form. He also declined to print a retraction requested by respondent. Calder has no other relevant contacts with California.

In considering petitioners' motion to quash service of process, the Superior Court surmised that the actions of petitioners in Florida, causing injury to respondent in California, would ordinarily be sufficient to support an assertion of jurisdiction over them in California.[5] But the court felt that special solicitude was necessary because of the potential "chilling effect" on reporters and editors which would result from requiring them to appear in remote jurisdictions to answer for the content of articles upon which they worked. The court also noted that respondent's rights could be "fully satisfied" in her suit against the publisher without requiring petitioners to appear as parties. The Superior Court, therefore, granted the motion.

The California Court of Appeal reversed. 138 Cal. App. 3d 128, 187 Cal. Rptr. 825 (1982). The court agreed that neither petitioner's contacts with California would be sufficient

---

ing that an uncontroverted affidavit shows that he never visited California to research the article. Since we do not rely for our holding on the alleged visit, see n. 6, *infra*, we find it unnecessary to consider the contention.

[5] California's "long-arm" statute permits an assertion of jurisdiction over a nonresident defendant whenever permitted by the State and Federal Constitutions. California Civ. Proc. Code Ann. § 410.10 (West 1973) provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

for an assertion of jurisdiction on a cause of action unrelated to those contacts. See *Perkins* v. *Benguet Mining Co.*, 342 U. S. 437 (1952) (permitting general jurisdiction where defendant's contacts with the forum were "continuous and systematic"). But the court concluded that a valid basis for jurisdiction existed on the theory that petitioners intended to, and did, cause tortious injury to respondent in California. The fact that the actions causing the effects in California were performed outside the State did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects.[6] The court rejected the Superior Court's conclusion that First Amendment considerations must be weighed in the scale against jurisdiction.

A timely petition for hearing was denied by the Supreme Court of California. App. 122. On petitioners' appeal to this Court, probable jurisdiction was postponed. 460 U. S. 1080 (1983). We conclude that jurisdiction by appeal does not lie. *Kulko* v. *California Superior Court*, 436 U. S. 84, 90, and n. 4 (1978).[7] Treating the jurisdictional statement as

---

[6] The Court of Appeal further suggested that petitioner South's investigative activities, including one visit and numerous phone calls to California, formed an independent basis for an assertion of jurisdiction over him in this action. In light of our approval of the "effects" test employed by the California court, we find it unnecessary to reach this alternative ground.

[7] *Kulko* involved an assertion of jurisdiction under the same California statute at issue here. The Court held that the case was improperly brought to the Court as an appeal, since no state statute was "drawn in question . . . on the ground of its being repugnant to the Constitution, treaties or laws of the United States," 28 U. S. C. § 1257(2). Petitioners attempt to distinguish *Kulko* on the ground that the defendant in that case argued only that the Due Process Clause precluded the exercise of *in personam* jurisdiction over him, whereas petitioners argued below that the California statute as applied to them would be unconstitutional. We are unpersuaded by this shift in emphasis. The jurisdictional statute construed by the California Court of Appeal provides that the State's jurisdiction is as broad as the Constitution permits. See n. 5, *supra*. As in *Kulko*, the opinion below does not purport to determine the constitutionality of the California jurisdictional statute. Rather, the question decided was whether the Constitution itself would permit the assertion of jurisdic-

a petition for writ of certiorari, as we are authorized to do, 28 U. S. C. § 2103, we hereby grant the petition.[8]

The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any State with which the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken* v. *Meyer*, 311 U. S. 457, 463." *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945). In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer* v. *Heitner*, 433 U. S. 186, 204 (1977). See also *Rush* v. *Savchuk*, 444 U. S. 320, 332 (1980). The plaintiff's lack of "contacts" will not defeat otherwise proper jurisdiction, see *Keeton* v. *Hustler Magazine, Inc.*, *ante*, at 779–781, but they may be so manifold as to permit jurisdiction when it would not exist in their absence. Here, the plaintiff is the focus of the activities of the defendants out of which the suit arises. See *McGee* v. *International Life Ins. Co.*, 355 U. S. 220 (1957).

The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California.[9] The article was drawn from California sources,

---

tion. Under the circumstances, we find an appeal improper regardless of the terminology in which the petitioners couch their jurisdictional defense.

[8] Although there has not yet been a trial on the merits in this case, the judgment of the California appellate court "is plainly final on the federal issue and is not subject to further review in the state courts." *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 485 (1975). Accordingly, as in several past cases presenting jurisdictional issues in this posture, "we conclude that the judgment below is final within the meaning of [28 U. S. C.] § 1257." *Shaffer* v. *Heitner*, 433 U. S. 186, 195–196, n. 12 (1977). See also *Rush* v. *Savchuk*, 444 U. S. 320 (1980); *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286 (1980); *Kulko* v. *California Superior Court*, 436 U. S. 84 (1978).

[9] The article alleged that respondent drank so heavily as to prevent her from fulfilling her professional obligations.

and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California. *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U. S. 286, 297–298 (1980); Restatement (Second) of Conflict of Laws § 37 (1971).

Petitioners argue that they are not responsible for the circulation of the article in California. A reporter and an editor, they claim, have no direct economic stake in their employer's sales in a distant State. Nor are ordinary employees able to control their employer's marketing activity. The mere fact that they can "foresee" that the article will be circulated and have an effect in California is not sufficient for an assertion of jurisdiction. *World-Wide Volkswagen Corp.* v. *Woodson, supra,* at 295; *Rush* v. *Savchuk, supra,* at 328–329. They do not "in effect appoint the [article their] agent for service of process." *World-Wide Volkswagen Corp.* v. *Woodson, supra,* at 296. Petitioners liken themselves to a welder employed in Florida who works on a boiler which subsequently explodes in California. Cases which hold that jurisdiction will be proper over the manufacturer, *Buckeye Boiler Co.* v. *Superior Court*, 71 Cal. 2d 893, 458 P. 2d 57 (1969); *Gray* v. *American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432, 176 N. E. 2d 761 (1961), should not be applied to the welder who has no control over and derives no direct benefit from his employer's sales in that distant State.

Petitioners' analogy does not wash. Whatever the status of their hypothetical welder, petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of

that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. *World-Wide Volkswagen Corp.* v. *Woodson, supra,* at 297; *Kulko* v. *California Superior Court, supra,* at 97–98; *Shaffer* v. *Heitner, supra,* at 216. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. See *Rush* v. *Savchuk, supra,* at 332 ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction"). In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

We also reject the suggestion that First Amendment concerns enter into the jurisdictional analysis. The infusion of such considerations would needlessly complicate an already imprecise inquiry. *Estin* v. *Estin,* 334 U. S. 541, 545 (1948). Morever, the potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into account in the constitutional limitations on the substantive law governing such suits. See *New York Times Co.* v. *Sullivan,* 376 U. S. 254 (1964); *Gertz* v. *Robert Welch, Inc.,* 418 U. S. 323 (1974). To reintroduce those concerns at the jurisdictional stage would be a form of double counting. We have already declined in other contexts to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protec-

tions embodied in the substantive laws.   See, *e. g.*, *Herbert* v. *Lando*, 441 U. S. 153 (1979) (no First Amendment privilege bars inquiry into editorial process).   See also *Hutchinson* v. *Proxmire*, 443 U. S. 111, 120, n. 9 (1979) (implying that no special rules apply for summary judgment).

We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California.   The judgment of the California Court of Appeal is

*Affirmed.*