### The FARFIELD COMPANY

### v.

### C.T. MAIN CONSTRUCTION, INC. and J. Scott Searway.

#### Civ. A. No. 85–959.

United States District Court, E.D. Pennsylvania.

Dec. 18, 1985.

904

Susan Freidman, Lancaster, Pa., for plaintiff.

Charles F. Waskevich, Jr., Springfield, N.J., and Richard C. Low, Lancaster, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant J. Scott Searway, the former executive vice-president of defendant C.T. Main Construction Company, Inc., has moved to dismiss the complaint against him for lack of personal jurisdiction or, in the alternative, for insufficiency of service of process. As explained below, I find that Searway's contacts with Pennsylvania were sufficiently extensive and deliberate to bring him within the ambit of its long-arm statute. In addition, I find that he was properly served, so I deny the motion to dismiss.

Plaintiff Farfield Company has sued defendants for defamation arising out of statements made by Searway acting as Main's agent. Defendants, both of whom are Maine residents, first had contact with Pennsylvania in 1982 when Main became the construction manager for the Safe Harbor Hydroelectric Facility Project at Conestoga, Pennsylvania. Searway, who was in charge of the expansion project, visited the Pennsylvania site from time to time.

Shortly after Main took charge of the project, Farfield sought to become a subcontractor on the project, but its bid was rejected. In 1983, two reporters from Lancaster, Pennsylvania—one from a newspaper and the other from the local television station—telephoned Searway at his Maine office, asking why Farfield's bid had been rejected. On each of those two occasions, Searway responded to the reporters' questions by saying that Farfield had not been selected because it lacked power plant experience. Those comments are the basis for this suit.

This action began in the Court of Common Pleas for Lancaster County and was later removed to federal court. As permitted by Pennsylvania law, the suit was commenced by filing with the prothonotary a praecipe for a writ of summons. Pa.R. Civ.P. 1007(1). The writs both for Searway and Main were then served at the Pennsylvania project site.

### I. *Personal Jurisdiction*

Searway is subject to suit in Pennsylvania if his actions fall within the purview of the state's long-arm statute and if he has sufficient "minimum contacts" with Pennsylvania to satisfy the requirements of due process. If later shown to be defamatory, Searway's statements to the reporters would bring him under the reach of that part of the long-arm statute allowing jurisdiction over those "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5322(a)(4) (1981). Furthermore, the statute provides for the exercise of jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." *Id.* § 5322(b). My inquiry, then, need focus only on whether it offends the due process clause for Farfield to summon Searway to court in Pennsylvania in this circumstance.

The fourteenth amendment limits the power of states to render valid personal judgments against non-residents. It requires that there be a "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). It injects considerations of "fair play and substantial justice" into the determination of whether an individual's "minimum contacts" are enough to give rise to jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). And it mandates that someone not be forced to defend a suit in a distant state unless he has had purposeful contact with that forum "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The Supreme Court has recently interpreted these traditional strictures in the context of defamation actions, holding that publishers and reporters could be subject to suit in states to which they knowingly sent libelous stories—despite the defendants' minimal personal contacts. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). These two decisions, *Calder* in particular, show that jurisdiction may properly be asserted over Searway here.

In *Calder,* two Florida reporters of the *National Enquirer* were sued in California for a story they had written and edited about Californian Shirley Jones. Although the publication circulated about 600,000 copies per week in California and was itself surely amenable to suit there, the reporters argued that they were not. The Supreme Court found that, notwithstanding the reporters' minimal contacts with California, jurisdiction was warranted because "their intentional, and allegedly tortious, actions were expressly aimed at California." *Calder,* 104 S.Ct. at 1487. They knew that their article "would have a potentially devastating impact upon [Jones]. And they knew that the brunt of that injury would be felt by [her] in the State in which she lives and works." *Id.* Under these circumstances, the Court said, the reporters should have reasonably foreseen being called into court "to answer for the truth of the statements made in their article." *Id.*

In this case, there is no dispute that Searway knew to whom he was speaking—reporters from Farfield's hometown. There can, thus, be no dispute that Searway realized that his comments would be published in Pennsylvania and would become known to current and potential business associates of Farfield. Searway maintains that he should not be called to Pennsylvania to account for his statements because he did not initiate the contact with the reporters. Although Searway may not have gone out of his way to broadcast his comments in Pennsylvania, he nonetheless was fully aware of his potential audience when he spoke. What the Supreme Court said in *Calder* applies with equal force here. Assuming for the moment that his statements were defamatory, Searway must have realized that he was injuring

Farfield, and that the injury would be felt especially in Pennsylvania. Accordingly, it is neither surprising nor unfair for Farfield to demand that Searway answer its claim in Pennsylvania.

## II. *Service of Process*

■ Searway complains that service of process was insufficient because he was not personally served nor did he receive a writ by mail at his home. Farfield contends, on the other hand, that serving Searway at the Conestoga project site fulfilled the requirement of Pennsylvania law. I agree with Farfield.

Federal Rule of Civil Procedure 4(c)(2)(C)(i) authorizes service of summons "pursuant to the law of the State in which the district court is held." I, therefore, need to examine whether serving Searway at Main's work site is permissible in Pennsylvania. According to Pennsylvania Rule of Civil Procedure 2079(a)(2), non-residents may be served by the sheriff "handing an attested or certified copy of the process ... at any office or usual place of business of the defendant, to the agent, clerk or person for the time being in charge thereof." If the Conestoga site qualifies as Searway's "office or usual place of business," service is thus proper under Pennsylvania law.

The test set down by the Pennsylvania Supreme Court is whether Searway had "more proprietary responsibility and control over the business than that possessed by the average employee." *Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 99, 321 A.2d 906, 910 (1974). Searway acknowledges that he was the Main official in charge of the Conestoga project and that he was an executive vice-president of Main. As such, he surely possessed authority over the site, so that service is appropriate under Rule 2079.

Furthermore, Searway does not claim that he never received the summons or never had notice of the suit. In fact, he could not so claim because his attorney has filed papers on his behalf, and he has appeared in Pennsylvania for the taking of his deposition. The basis purpose of Rule 2079—to ensure that defendants actually receive notice of actions filed against them—has thus been met here.