**Neal HORSLEY, Plaintiff,**

v.

**Gloria FELDT, Planned Parenthood Federation of America, Inc., Kim Gandy, and The National Organization for Women, Defendants.**

**No. Civ.A. 3:99–CV–136J.**

United States District Court,
N.D. Georgia,
Newnan Division.

June 30, 2000.

Neal Horsley, Carrollton, GA, pro se.

Joseph R. Bankoff, Steven L. Lane, King & Spalding, Atlanta, GA, Leslie J. Bryan, Ralph Irving Knowles, Jr., Doffermyre, Shields, Canfield, Knowles & Devine, Atlanta, GA, for defendants.

## ORDER

CAMP, District Judge.

This case is before the Court on the Motions to Dismiss for Lack of Personal

Jurisdiction of Defendants Kim Gandy and the National Organization for Women, [# 6–1] and [# 7–1], the Motion for Sanctions of Defendants Gandy and NOW [# 14–1], Plaintiff's Motion to Disclose Documents [# 19–1], the Motion for Protective Order of Defendants Gandy and NOW [# 23–1], the Motion to Strike of Defendants Gandy and NOW [# 26–1], Plaintiff's Motion for Production of Documents [# 27–1], Plaintiff's Motion for Amendment of Mandatory Disclosures [# 30–1], the Motion of Defendants Gandy and NOW to Suspend the Discovery Period [# 31–1], Defendant Gloria Feldt's and Planned Parenthood Federation of America, Inc.'s Motion to Suspend the Discovery Period and for Protective Order [# 32–1] and [# 32–2], and Defendant Planned Parenthood Federation of America, Inc.'s and Gloria Feldt's Motion for Leave to File Amended Answer [# 34–1].

## I. BACKGROUND

On October 23, 1998, Dr. Barnett Slepian was killed by a bullet from a high powered rifle while standing in the kitchen of his home near Buffalo, New York. Dr. Slepian was a medical doctor who legally performed abortions. Dr. Slepian's murder attracted national and international media attention. Following his murder, Dr. Slepian's name appeared on an Internet website which was accessible at christiangallery.com called "The Nuremberg Files" with a strike-out graphic or a black line through his name.[1] This website was created by Plaintiff Neal Horsley, an anti-abortion activist.

Plaintiff alleges that Defendant Gloria Feldt, acting on behalf of Defendant Planned Parenthood Federation of America, Inc. in her capacity as National President of that organization, held a press conference on October 24, 1998, the day after Dr. Slepian's murder. Plaintiff contends that portions of the press conference were broadcast nationally later that day by

CNN Live News. Plaintiff alleges that Feldt stated that:

> his [Dr. Slepian's] name had been on a list—you can look it up on the web, christiangallery.com—a list of doctors who are subject to surveillance and murder. His name was already crossed out.

(Complaint ¶ 12). Plaintiff contends that an account of Ms. Feldt's statements also appeared in an Associated Press article released on the same date. According to Plaintiff, this article quoted Ms. Feldt as follows:

> Gloria Feldt also told a news conference in midtown Manhattan that the name of the physician, Dr. Barnett Slepian, had appeared on a list of abortion doctors marked for death that was circulated on the Internet. Feldt said she didn't know how long the Internet target list that included Slepian's name has existed, or whether either he or the police were aware of it . . .

(Complaint ¶¶ 9–10).

Plaintiff alleges that Defendants Gloria Feldt and Planned Parenthood are liable for defamation as a result of these alleged statements because they suggested that Plaintiff, as the author and creator of the website at issue, was a conspirator or otherwise an accessory to the murder of Dr. Slepian. Defendants Feldt and Planned Parenthood have filed a motion for judgment on the pleadings, which is currently pending before this Court.

Two days later, Plaintiff alleges that CNN Live broadcast a news story regarding the murder which included interviews with Kim Gandy, acting in her capacity as Executive Vice President of the National Organization for Women, and Plaintiff Horsley. During an exchange between Plaintiff and Ms. Gandy, Ms. Gandy allegedly stated:

> You have the blood of these doctors on your hands, because you have incited

---

1. The Court recognizes that the Parties in this case may dispute whether the name and the graphic first appeared on the Internet site prior to or following Dr. Slepian's death. As this issue is not relevant to the instant motions, the Court need not address any dispute in this regard at this juncture.

and you have inspired and conspired with others to result in what exactly has happened, that these doctors have been murdered. And until the United States government starts treating these, instead of treating them as isolated incidents, starts treating them as the conspiracy they are and starts putting the same resources into these murderers that went into the Olympic bombings, that went into the World Trade Center bombings, we are going to see this continue to happen. Doctors and clinical workers will die.

(Complaint ¶ 34). Plaintiff contends that these statements maliciously and falsely accused him of conspiring to murder doctors and subject Defendants Gandy and NOW to liability for defamation. As a result of all of the statements allegedly made by Defendants surrounding this incident, Plaintiff claims that he suffered significant personal and professional damage, including numerous death threats and a loss of his business.

Defendants NOW and Gandy have moved to dismiss Plaintiff's Complaint against them, claiming that this Court lacks personal jurisdiction over them as residents of the Washington D.C. forum. Additionally, Defendants Gandy and NOW seek to suspend discovery in the case until the Court's ruling on this potentially dispositive motion. Further, Defendants Gandy and NOW have moved for sanctions against pro se Plaintiff Horsley pursuant to Rule 11 of the Federal Rules of Civil Procedure, alleging that his Complaint is frivolous and interposed for the improper purpose of harassing them.

Defendants Feldt and Planned Parenthood seek leave to amend their Answer to Plaintiff's Complaint and seek a stay of discovery as to them pending this Court's resolution of their motion for judgment on the pleadings.

Finally, Plaintiff has filed motions seeking discovery from all Defendants and a motion seeking leave to amend his mandatory disclosures.

## II. PERSONAL JURISDICTION

Plaintiff bears the burden of establishing jurisdiction in this Court. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 626 (11th Cir.1994). Where, as here, an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a *prima facie* case of jurisdiction to survive the motion to dismiss. *Id.; Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hospital*, 926 F.Supp. 1106, 1112 (N.D.Ga. 1996) (Hull, J.). Plaintiff may establish a *prima facie* case by presenting sufficient evidence to withstand a motion for directed verdict. *Id.* The Court construes the allegations in the Complaint as true to the extent that they are uncontroverted by Defendant's evidence. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). Where there are conflicts between the Parties' evidence, the Court makes all reasonable inferences in favor of Plaintiff. *Id.*

Typically, a court must conduct a two-part inquiry to determine whether a non-resident defendant may be haled into a particular forum to defend a lawsuit. First, a court must look to the long arm statute of the forum in which it sits to determine whether the state intended to reach out and exercise personal jurisdiction over the non-resident defendant at issue. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.1996). If the provisions of the long arm statute are satisfied, the Court must then determine whether the non-resident defendant has sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.*

[6] If, however, a state's long arm statute confers personal jurisdiction to the limits of the Due Process Clause, the Court may pass over analysis of the statute and exercise jurisdiction where the constitutional requirements are satisfied. *Allegiant*, 926 F.Supp. at 1112. Although there

has been some debate about the reach of the Georgia long arm statute, both state and federal courts considering this issue in recent years have uniformly held that the Georgia long arm statute is intended to exercise jurisdiction over non-resident defendants to the maximum extent permissible under the Due Process Clause of the United States Constitution.[2] *See Francosteel*, 19 F.3d at 627 ("Georgia's long arm statute confers *in personam* jurisdiction to the maximum extent allowed by the due process clause of the federal Constitution."); *Maid Brigade Sys., Inc. v. Carpenter*, No. 93–CV–3000–ODE, 1994 WL 903888 *4 (N.D.Ga. Aug. 8, 1994) (Evans, J.) ("Thus, the court may disregard the literal language of the long arm statute and proceed directly to the minimum contacts analysis."); *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 600 n. 1, 422 S.E.2d 863 (1992) ("[T]he policy of our Long Arm Statute is to exercise jurisdiction over nonresident defendants to the maximum extent permitted by procedural due process."). Accordingly, the Court will proceed directly to a due process analysis in addressing Defendants' motions to dismiss.

In *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a California resident sued the individual author and editor of an article about her appearing in the National Enquirer, alleging defamation. Both the author and editor of the article in question were residents of Florida with limited connection to the California forum separate and apart from the article itself. As such, both of these defendants moved to dismiss the plaintiff's claims against them, claiming that the exercise of personal jurisdiction over them in California would violate due process. *Calder*, 465 U.S. at 786–787, 104 S.Ct. 1482.

The California trial court granted defendants' motions to dismiss. While the court determined that the actions of the defendants in Florida causing injury to the plaintiff in California would ordinarily satisfy the requirements of due process, the court found that the First Amendment concerns raised by the defendants' status as reporters required additional contacts with the remote forum in order for an exercise of jurisdiction to be appropriate. *Id.* The trial court, therefore, granted the motions to dismiss.

The California Court of Appeals reversed. The court agreed with the trial court that the contacts of the defendants unrelated to the alleged defamation would be insufficient for the assertion of jurisdiction. The court concluded, however, that a valid basis for jurisdiction existed on the theory that the defendants allegedly intended to, and did cause tortious injury to the plaintiff in California. *Id.* at 787, 104 S.Ct. 1482. The fact that the actions causing the effects in California were performed outside the State did not prevent the exercise of jurisdiction over a cause of action arising out of those effects. Further, the court rejected the conclusion of the trial court that First Amendment concerns played a role in the jurisdictional analysis. *Id.*

In reviewing the exercise of jurisdiction, the Supreme Court reiterated the well-settled principle that the due process analysis focuses on "the relationship among the defendant, the forum, and the litigation." *Id.* at 788, 104 S.Ct. 1482 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Despite the argument of the defendants that they, as individual employees of the National Enquirer, had no control over the

---

**2.** Defendants opposition to personal jurisdiction in this case implicitly argues that the decision of the Georgia Supreme Court in *Gust v. Flint*, 257 Ga. 129, 356 S.E.2d 513 (1987) somehow altered its prior holdings that the jurisdiction of the Georgia courts extends to the limits of due process. Contrary to this argument, however, the Georgia

Supreme Court has reiterated the policy of the State to exercise jurisdiction over non-residents to the maximum extent possible under the United States Constitution following its holding in *Gust. See Allstate Ins. Co. v. Klein*, 262 Ga. 599, 600 n. 1, 422 S.E.2d 863 (1992).

circulation of the publication at issue and derived no direct economic benefit from the sales of their employer in the distant California forum, the Court found that the exercise of jurisdiction over the individual defendants was proper. Unlike allegations of untargeted negligence, the plaintiff alleged intentional and tortious actions expressly aimed at the California forum. *Id.* 789, 104 S.Ct. 1482. The Court noted that the allegedly libelous story concerned the California activities of a California resident. It allegedly impugned the reputation of the plaintiff whose career was centered in California. Further, the Court noted that the brunt of the alleged harm, in terms of the plaintiff's emotional distress and damage to her career, was suffered in California. *Id.* at 788–89, 104 S.Ct. 1482. Jurisdiction was, therefore, proper based upon the foreseeable "effects" of the defendants' Florida activities in California.

In so holding, the Supreme Court expressly rejected the notion that First Amendment concerns enter into the jurisdictional analysis. The Court found that the consideration of such issues would "needlessly complicate an already imprecise inquiry" and that the First Amendment considerations raised by defamation suits are amply accounted for by the substantive law governing such claims. *Id.* at 790, 104 S.Ct. 1482.

The "effects" test affirmed in *Calder* is alive and well and Defendants' motions to dismiss Plaintiff's claims in this case based upon personal jurisdiction are squarely controlled thereby. As in *Calder*, Plaintiff in this case alleges that Defendant Gandy, acting on behalf of Defendant NOW, intentionally and maliciously defamed him on a live news program broadcast throughout the nation. Based upon the broadcast itself, Plaintiff contends that Defendants were well aware that he was a Georgia resident operating his business in the Georgia forum. Plaintiff charges that Defendants' allegedly tortious and intentional acts directed specifically at him and his work caused him severe personal and professional injury in Georgia. Based upon these allegations, Defendants could " 'reasonably anticipate being haled into court there' to answer for the truth of th[eir] statements." *Calder*, 465 U.S. at 790, 104 S.Ct. 1482. *See also Bochan v. La Fontaine*, 68 F.Supp.2d 692, 702 (E.D.Va.1999) (allegedly defamatory statements posted on the Internet from Texas and New Mexico regarding the presumably local acts of an individual the defendants knew was a Virginia citizen subjected defendants to personal jurisdiction in Virginia under the Calder effects test where reputational harm was primarily suffered in Virginia where the plaintiff lived and worked).[3]

**3.** It is clear that the State of Georgia intends to exercise personal jurisdiction to the limits of due process in the specific context raised by this case. In a defamation suit two years prior to the Supreme Court's *Calder* decision, the Georgia Supreme Court rejected an effects analysis of personal jurisdiction. *Bradlee Management Serv., Inc. v. Cassells*, 249 Ga. 614, 292 S.E.2d 717 (1982). Like the California trial court in *Calder*, the Fifth Circuit Court of Appeals at that time had held that First Amendment considerations required a greater showing of contacts with a foreign forum to satisfy the due process clause in the context of libel cases. *See The New York Times Co. v. Connor*, 365 F.2d 567, 572 (5th Cir.1966). In rejecting an effects theory of jurisdiction, the Georgia Supreme Court specifically noted that the intent of the Georgia long arm statute was to exercise jurisdiction

to the limits of due process and that the statute required contacts in addition to the defamatory act at issue in order to satisfy due process in conformity with this Fifth Circuit jurisprudence. Following the express rejection of this First Amendment requirement by the United States Supreme Court and adoption of the effects test, it is clear from the analysis in *Bradlee* that the Georgia courts would extend jurisdiction to the limits of due process as defined by *Calder*. Like the *Bradlee* case, the cases cited by Defendants in support of a more restrictive reading of the reach of the Georgia long arm predate *Calder*. Even assuming that the Georgia long arm required a greater quantum of contact than that required by the Constitution, the Court notes that courts considering similar issues have found an Internet presence within the forum, like Defendants' in this case, sufficient

Accordingly, Plaintiff has established a prima facie case of personal jurisdiction and Defendants' Motions to Dismiss, [# 6–1] and [# 7–1] are **DENIED.** Because the Court did not consider Plaintiff's Surreply memoranda in addressing Defendants' dispositive motions, Defendants' Motion to Strike for failure to comply with Local Rule 7.1 [# 26–1] is also **DENIED AS MOOT.**

## III. SANCTIONS

 Although Defendants Gandy and NOW have not moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted or moved for judgment on the pleadings, these Defendants seek sanctions against pro se Plaintiff pursuant to Federal Rule of Civil Procedure 11(b), claiming that he has filed the Complaint against them without legal or factual basis and for the improper purpose of harassing Defendants. Specifically, Defendants argue that Plaintiff should be subject to sanctions because there is no conceivable basis for him to argue that the statements at issue were untrue or uttered with actual malice.

Plaintiff's opposition to this motion reflects that Plaintiff, as a pro se litigant, consulted at least two attorneys to evaluate the merit of his claims prior to filing suit. In addition, Plaintiff's opposition to the motion for sanctions, as well as to Defendants' motions to dismiss, demonstrates that he has made attempts to conduct thorough legal research regarding the basis for his claims. Plaintiff alleges that Defendant Gandy, acting on behalf of NOW, accused him of conspiring to murder Dr. Slepian on national television. While Plaintiff's claims may ultimately prove meritless based upon the applicable substantive law, as Plaintiff readily concedes in his opposition to the motion for sanctions, it cannot be said that his claims are completely lacking in either factual or legal basis within the meaning of Rule 11.

*See Business Guides, Inc. v. Chromatic Comm. Enter., Inc.,* 498 U.S. 533, 553, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ("Rule 11 sanctions are not tied to the outcome of the litigation; the relevant inquiry is whether a specific filing was, if not successful, at least well-founded.").

Furthermore, there is no evidence that Plaintiff has filed suit solely for the improper purpose of harassing Defendants. To be sure, filing suit against any defendant is certain to cause no small amount of inconvenience. This natural consequence of all civil litigation does not fall within the ambit of Rule 11, however. Plaintiff alleges that he promptly told Ms. Gandy that he would pursue a cause of action for slander following her comments on the CNN broadcast and that this immediate response and reaction amply demonstrates his good faith belief in the nonfrivolous nature of his claims.

Based upon the foregoing, Defendants' Motion for Sanctions [# 14–1] is **DENIED.** This is without prejudice to Defendants' ability to renew such motion if at any time sanctions appear warranted.

## IV. DISCOVERY ISSUES

Defendants NOW and Gandy have sought a protective order and to suspend the discovery period in this case pending a ruling on their motions to dismiss based upon personal jurisdiction. In light of this Court's ruling with respect to personal jurisdiction, Defendants' Motions for Protective Order and for a Suspension of the Discovery Period, [# 23–1] and [# 31–1], are **DENIED AS MOOT.**

 Defendants Gloria Feldt and Planned Parenthood Federation of America, Inc. have also moved to suspend discovery and for a protective order in light of their pending motion for judgment on the pleadings. Given the possibility that the resolution of this motion will dispose of

---

to supply such additional contact under a state's long arm statute. *See e.g., Bochan,* 68

F.Supp.2d at 701–02.

Plaintiff's claims against these Defendants on the pleadings and without discovery, Defendants' Motion to Suspend Discovery and for Protective Order and Related Relief [# 32–1] and [# 32–2] is **GRANTED.**

In an apparent effort to take advantage of the discovery process, Plaintiff has filed motions with the Court seeking the production of documents from Defendants. Even affording deference to Plaintiff's status as a pro se litigant, these motions for the production of documents fail to satisfy the Federal and Local Rules governing the progress of discovery in civil cases pending before this Court. Accordingly, Plaintiff's motions to produce documents, [# 19–1] and [# 27–1], are **DENIED.** Plaintiff's Motion to Amend Mandatory Disclosures [# 30–1] is **GRANTED.**

## V. AMENDMENT OF ANSWER

Finally, Defendants Planned Parenthood Federation of America, Inc. and Gloria Feldt have moved to amend their Answer pursuant to Federal Rule of Civil Procedure 15(a). Under Rule 15(a), leave to amend "shall be freely given when justice so requires." Plaintiff does not oppose Defendants' motion to amend. No substantial reason to deny the amendment appearing to the Court, Defendants' Motion for Leave to File Amended Answer [# 34–1] is **GRANTED.**

## VI. CONCLUSION

Based upon the foregoing, the Motions to Dismiss for Lack of Personal Jurisdiction of Defendants Kim Gandy and the National Organization for Women, [# 6–1] and [# 7–1], are **DENIED.** The Motion for Sanctions of Defendants Gandy and NOW [# 14–1] is also **DENIED.** Plaintiff's Motion to Disclose Documents and Plaintiff's Motion for Production of Documents, [# 19–1] and [# 27–1], are **DENIED.** The Motion for Protective Order of Defendants Gandy and NOW and the Motion of Defendants Gandy and NOW to Suspend the Discovery Period, [# 23–1] and [# 31–1], are **DENIED AS MOOT.** The Motion to Strike of Defendants Gandy and NOW [# 26–1] is **DENIED AS MOOT.** Plaintiff's Motion for Amendment of Mandatory Disclosures [# 30–1] is **GRANTED.** Defendant Gloria Feldt and Planned Parenthood Federation of America Inc.'s Motion to Suspend the Discovery Period and for Protective Order, [# 32–1] and [# 32–2], is **GRANTED.** Defendant Planned Parenthood Federation of America Inc.'s and Gloria Feldt's Motion for Leave to File Amended Answer [# 34–1] is **GRANTED.**