SPRING PATENTS, INC., a Hawaii
Corporation, Plaintiff,

v.

AVON RUBBER & PLASTICS, INC.,
a United Kingdom Corporation,
Defendant.

CIVIL No. 01–00258 SOM–KSC.

United States District Court,
D. Hawai'i.

Aug. 29, 2001.

R. Patrick Jaress, Jaress & Leong, Hon-
olulu, HI, for plaintiff.

Corlis J. Chang, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

MOLLWAY, District Judge.

### I. INTRODUCTION.

The facts of this case and applicable law have been set forth in this court's Order Denying Avon Rubber & Plastics, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Insufficient Service of Process; Order Denying Plaintiff Spring Patent, Inc.'s Motion for Preliminary Injunction, issued on August 29, 2001 ("Order No. 1"). The facts and law set forth in Order No. 1 are incorporated into the present order.

This action concerns a 1995 exclusive license agreement between Plaintiff Spring Patents, Inc. ("Spring"), and nonparty Bell Avon, Inc. ("Bell Avon"). Under the license agreement, Bell Avon was to be the exclusive manufacturer and distributor of leak-detection technology developed and patented by Spring. According to Spring, the technology can efficiently and effectively detect leaks in underground petroleum tanks and reduce the risk of toxic chemical spills into groundwater.

Spring claims that Defendant Avon Rubber & Plastics, Inc. ("Avon Rubber"), a majority shareholder in Bell Avon, directed Bell Avon to discontinue performance of its obligations under the license agreement. Spring also alleges that Avon Rubber ordered Bell Avon to retain the leak-detection technology instead of returning it to Spring.

Spring filed this action on April 20, 2001, asserting four causes of action against Avon Rubber: (1) improper restraint of trade under 15 U.S.C. § 1; (2) monopoliza-

tion of the market in violation of 15 U.S.C. § 2; (3) deceptive practices in violation of Haw.Rev.Stat. § 481A–3; and (4) tortious interference with Spring's contractual relations. On August 29, 2001, this court denied a motion by Avon Rubber to dismiss the case for lack of personal jurisdiction, improper venue, and insufficient service of process, and denied a motion by Spring for a preliminary injunction. Because Avon Rubber had not presented sufficient evidence to contradict Spring's allegations, the court deemed the Complaint uncontroverted, and found that Spring's uncontroverted allegations were sufficient to permit this court's exercise of specific personal jurisdiction over Avon Rubber under the effects test in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). *See* Order No. 1 at 13–14. The court then limited discovery for 60 days to matters relating to the personal jurisdiction issue and permitted renewal of Avon Rubber's motion based on such discovery. Following discovery, Avon Rubber did renew its motion to dismiss for lack of personal jurisdiction. The court GRANTS Avon Rubber's motion to dismiss.

### II. STANDARD OF REVIEW.

■ Spring, as the party seeking to invoke this court's jurisdiction, has the burden of establishing personal jurisdiction. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977). When, as here, "the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* However, the plaintiff may not rest on the bare allegations of the complaint, but must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba*

*Marketing Systems, Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977). If the plaintiff's written materials do not "demonstrate facts which support a finding of jurisdiction," then the plaintiff will not survive the motion to dismiss. *See Data Disc*, 557 F.2d at 1285.

 The court must accept uncontroverted allegations in Spring's complaint as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [Spring's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *See AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996) (citation omitted).[1] However, the court may not assume the truth of allegations in a pleading that are contradicted by affidavit. *Data Disc*, 557 F.2d at 1284.

## III. *ANALYSIS.*

The parties agree that only specific jurisdiction is in question here. The Ninth Circuit has articulated a three-part test to determine when it is proper for a court to exercise specific jurisdiction over a nonresident defendant. *See Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir.1991). The exercise of jurisdiction is consistent with due process when:

(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum; (2) the claim arises out of or results from the defendant's forum-related activities;

and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). Because Avon Rubber has not purposefully availed itself of the privileges of conducting activities in Hawaii, this court lacks personal jurisdiction over it.

 Physical contacts with the forum state are not necessary to establish purposeful availment. *Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482. The Supreme Court has established that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder*, 465 U.S. at 791, 104 S.Ct. 1482. "In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis." *Bancroft & Masters*, 223 F.3d at 1087. "To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.*

 The key question here is whether Avon Rubber committed an intentional act expressly aimed at Hawaii. The evidence does not indicate that Avon Rubber committed any such intentional act. In Order No. 1, the court held that the Complaint

---

1. If the plaintiff makes a prima facie showing of personal jurisdiction, however, it does not necessarily mean that he may then go to trial on the merits. *Data Disc*, 557 F.2d at 1285. If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues. *Id.* In this situation, when the plaintiff is put to his full proof, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial. *Id.* When the jurisdictional facts are intertwined with the merits, it is preferable that the determination of personal jurisdiction be made at trial. *Id.* at 1285 n. 2.

contained six allegations that, if true, would constitute a prima facie showing that Avon Rubber engaged in wrongful conduct targeted at Spring in Hawaii: (1) a Bell Avon employee, at Avon Rubber's direction, applied for a patent to block Spring's use of the leak-detection technology; (2) Avon Rubber deprived Spring's potential customers in Hawaii of the leak-detection technology; (3) Avon Rubber intentionally induced Bell Avon to breach the agreement; (4) Avon Rubber communicated with Spring in Hawaii and notified Spring that the leak-detection technology was unmarketable and that Bell Avon had terminated the agreement; (5) Avon Rubber misled Spring; and (6) Avon Rubber interfered with Spring's ability to develop, market, and sell the leak-detection technology. *See* Order No. 1 at 12–13. The court considers each of these allegations.

1. *"A BELL AVON EMPLOYEE, AT AVON RUBBER'S DIRECTION, APPLIED FOR A PATENT TO BLOCK SPRING'S USE OF THE LEAK–DETECTION TECHNOLOGY."*

Spring has not carried its burden of proof as to this allegation because it has not offered facts refuting Avon Rubber's evidence that the decision to apply for the patent was made solely by Bell Avon. Spring contends that Dennis Benson ("Benson"), Avon Rubber's "in-house attorney," directed Robert Homes ("Homes"), an engineer at Bell Avon, to apply for a provisional patent application for an improvement to Spring's leak-detection technology, thereby interfering with Spring's ability to patent other fields of use for the leak-detection technology. Benson, however, denies under oath that Avon Rubber dictated or required that Bell Avon file the provisional patent application under Homes's name, *see* Benson Dep. at 130:19–130:24, and states that the decision to file the provisional patent was made at Bell Avon, *see id.* at 130:25–131:4.

Spring has failed to come forth with any evidence to support the truthfulness of its allegation. It merely speculates that the filing of the provisional patent application may have been part of a scheme to ruin Spring's business, without supporting its allegation with any affirmative proof. Spring notes that Avon Rubber's Privilege Log indicates that Benson communicated with Homes, but presents no evidence to refute Avon Rubber's claim, supported by Benson's deposition testimony, that Benson was acting on behalf of Bell Avon, and not on behalf of, or at the direction of, Avon Rubber. *See* Benson Dep. at 80:21–83:7. Spring cites evidence indicating only that Benson did not disclose to Spring the provisional patent application until five months after it was filed, and that Benson knew that G. Everett Spring ("Everett"), Spring's president, was upset about the filing and demanded its withdrawal. However, this evidence in no way supports Spring's allegation. Accordingly, the court finds this allegation insufficient to permit the exercise of jurisdiction over Avon Rubber.

2. *"AVON RUBBER DEPRIVED SPRING'S POTENTIAL CUSTOMERS IN HAWAII OF THE LEAK–DETECTION TECHNOLOGY."*

It appears this allegation is based on statements by Roger Hunt ("Hunt"),[2] Larry Sipe ("Sipe"),[3] Don Samardich ("Sa-

---

2. Robert Hunt is Avon Rubber's director of corporate planning.

3. Larry Sipe is a former president of Bell Avon.

mardich"),[4] and Benson, and on Everett's personal knowledge and belief. *See* Answer to Interrog. 4, Pl.'s Resp. Def.'s First Req. Answers to Interrogs. ("Answer to Interrog. 4"), attached as Ex. H to Def.'s Mot. Dismiss (October 26, 2001). Much of Everett's personal knowledge and belief consists of speculation and conclusory assertions,[5] or is based on purported information from Benson for which there is no foundation. The alleged statements by Hunt, Sipe, and Samardich do not appear relevant to the allegation, and Spring has not indicated any relevance. At most, Spring uses the evidence as a basis for speculation. As to Benson, Spring has not refuted Avon Rubber's evidence that whatever he did was solely on behalf of Bell Avon.

Spring argues that Avon Rubber "concedes the personal jurisdiction issue" as to this allegation, because Avon Rubber has not presented affirmative proof that the allegation is false. However, Spring has cited no law to support its proposition that Avon Rubber must controvert allegations with affirmative proof negating the allegations. To controvert means "[t]o dispute or contest; esp., to deny (as an allegation in a pleading) or oppose in argument." Black's Law Dictionary 331 (7th ed.1999). This court held in its previous Order that Avon Rubber had to do more than simply deny Spring's allegations. *See* Order No. 1 at 14. Avon Rubber has done so. It was faced with the task of showing that it did not do what Spring alleged. Given the inherent difficulty of proving that specific acts were not performed, Avon Rubber chose to contest Spring's allegation by determining the basis for the allegation and then showing the insufficiency of that ba-

sis. It was not necessary for Avon Rubber to set forth affirmative proof contesting the allegation, as Avon Rubber successfully controverted the allegation by showing that none of the materials Spring relied upon supported Spring's allegation.

■ In cases in which plaintiffs have made out a prima facie case for personal jurisdiction, they have offered specific evidence supporting their allegations. For example, in *Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir.1998), the plaintiffs offered licensing agreements, letters, and other documents giving rise to "a strong inference" that defendants had purposeful contacts with the forum state. *See id.* at 1320. As a result, the Ninth Circuit upheld the district court's conclusion that the documents made out a prima facie case for specific jurisdiction. *See id.* Here, by contrast, Avon Rubber has shown that Spring's evidence in no way supports the inferences Spring draws from them. *See also Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1393–94 (9th Cir.1984)(plaintiff made a prima facie showing of an alter ego relationship through affidavits indicating conversion of corporate assets for shareholders' use, treatment of various corporations as one, and transfer of assets).

Spring argued at the hearing that it could rest on its original allegation because Avon Rubber did not discover evidence affirmatively controverting the allegation, and expressed bewilderment at the "new law" the court was allegedly applying in requiring Spring to put forth evidence beyond the pleadings in light of Avon Rubber's response. However, this court has consistently held that, in order to establish

---

4. Don Samardich is a former president of Avon Rubber.

5. For example, Everett states, "I know that Avon Rubber took direct control of Bell Avon, not to help perform the license agreement, but to improperly terminate the agreement as described above and to injure Spring Patent's rights." Answer to Interrog. 4.

a prima facie case, Spring must demonstrate facts supporting jurisdiction. *See* Order No. 1 at 8; *accord Data Disc,* 557 F.2d at 1285. Unsupported allegations will not suffice. *See AT & T,* 94 F.3d at 591; *Amba Marketing Systems,* 551 F.2d at 787.

In *AT & T,* AT & T alleged that one of the defendants exercised "total control" over another defendant, and that personal jurisdiction could therefore be exercised over the controlling defendant through an alter ego relationship. However, the court found that AT & T had failed to establish a prima facie case of an alter ego relationship because the evidence indicated no more than a normal parent-subsidiary relationship. *See AT & T,* 94 F.3d at 591. In *Amba,* Amba alleged that the court had personal jurisdiction over the defendant because the defendant's items had made their way into the forum state. However, the Ninth Circuit held that Amba "could not simply rest on the bare allegations of its complaint, but rather was obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba,* 551 F.2d at 787. Because Amba had made no showing that defendant's items had actually made their way into the forum state, the Ninth Circuit affirmed the district court's dismissal for lack of personal jurisdiction. *See id.*

Like the plaintiffs in *AT & T* and *Amba,* Spring has not established a prima facie case for jurisdiction because it has not presented evidence that supports its allegation. This court could appropriately rely on the discovery process for "a more satisfactory showing of the facts" bearing on the question of jurisdiction. *Data Disc,* 557 F.2d at 1285 n. 1. Spring should therefore not have expected to rely merely on its bare allegation once Avon Rubber demonstrated that the allegation had no factual basis. This court gave the parties additional discovery time out of concern over whether Spring would be "able to support its claim of jurisdiction as the record develops," and noted that "Avon Rubber may be able to show through further submissions that Spring's allegations are insupportable." *See* Order No. 1 at 20. Avon Rubber has done just that by showing that Spring's allegation is based not on facts, but only on speculation. Spring cannot now claim surprise at being required to respond to Avon Rubber's submissions showing that Spring's allegation is unsupported.

### 3. "AVON RUBBER INTENTIONALLY INDUCED BELL AVON TO BREACH THE AGREEMENT."

Spring has not satisfied its burden of proof as to this allegation. Avon Rubber states in interrogatory answers that it did not direct or instruct Bell Avon either to terminate or to continue the agreement. *See* Answer to Interrog. 1(b), Def.'s Answers to Pl.'s Req. for Answers to Interrog. dated Sept. 12, 2001, attached as Ex. C to Def.'s Mot. Dismiss (October 26, 2001). Avon Rubber explains that the decision to terminate the agreement was made by Bell Avon upon the recommendation of its president, Bob Nissley,[6] that the agreement be terminated because it was not commercially viable. *See id.*

Spring counters that Avon Rubber terminated the license agreement "not because it was unmarketable, but, in order to carry out Roger Hunt's plans to misappropriate the technology for itself." Pl.'s Am.

---

6. Spring questions whether Bob Nissley was actually the President of Bell Avon. However, G. Everett Spring himself testified that Nissley was Bell Avon's president. *See* Deposition of G. Everett Spring (October 9, 2001) ("Spring Dep.") at 25:1–4, attached as Ex. A to Def.'s Mot. Dismiss Lack Pers. Juris. (Oct. 26, 2001).

Mem. Opp. Def.'s Mot. Dismiss at 11–12 ("Pl.'s Opp."), attached as Ex. 1 to Errata to Pl.'s Am. Mem. Opp. Def.'s Mot. Dismiss. Spring cites three pieces of evidence in support of this claim: Everett's personal knowledge and belief, a memo written by Hunt, and Hunt's position as president of Avon Rubber. None of this evidence supports Spring's allegation.

Everett has not offered evidence of personal knowledge. He says only that Hunt "believed that Avon Rubber still had the right to make 'a major strategic decision' whether to keep the license agreement activity in Bell Avon, Inc." *See* Answer to Interrog. 4. However, Everett admitted that he does not recall when Hunt's alleged statement was made, *see* Spring Dep. at 13:9–13:10, that he has never had a personal conversation with or met Hunt, *see id.* at 13:23–14:3, and that he has never communicated directly with Hunt, *see id.* at 14:19–14:20. Moreover, even if Hunt made the alleged statement and Avon Rubber did have such a right, there is no evidence that Avon Rubber ever exercised it.

Spring also points to a June 9, 1995 memo (the "Hunt memo") from Hunt to Samardich commenting on a business plan for an underground storage tank project. *See* Mem. from Roger Hunt to Don Samardich (June 9, 1995), attached as Ex. 3 to Pl.'s Opp. Even though the Hunt memo is dated nearly four years before the license agreement was terminated, Spring argues that it "shows that [Avon Rubber] specifically targeted the license agreement for termination." This is not a fact; it is a conclusion that is not supported by the text of the Hunt memo itself. Nothing in Hunt's memo even suggests Spring's reading. Instead, Hunt comments on the market, on packaging the product, on joint venture partners, and on financial data.

Spring argues that Hunt's position as president of Avon Rubber after Avon Rubber took over "primary oversight" of Bell Avon's management in 1994, *see* Dep. of Dale H. Rosser (October 12, 2001) ("Rosser Dep.") at 23:8–23:13, attached as Ex. 5 to Pl.'s Opp., provides "additional circumstantial evidence" of Spring's claim. However, Hunt's status as an officer of Avon Rubber does not prove that Hunt had plans to misappropriate Spring's technology, that such plans were ever executed, or that any actions by Bell Avon were at Avon Rubber's direction. Spring also presents no evidence as to what kind of "primary oversight" Avon Rubber exercised over Bell Avon, or whether that "primary oversight" included directing Bell Avon to terminate the agreement, as Spring alleges.

Spring also relies on evidence from Sipe, but this evidence is similarly unsupportive of Spring's allegation. Everett states that, in the fall of 1996, Sipe, who at that time was the president of Bell Avon, told him that "[Sipe] thought that Avon Rubber was going to abandon the project between Bell Avon and Spring Patents." *See* Answer to Interrog. 4. Even if Sipe did make this statement, it does not support Spring's allegation. First, Spring does not show how Sipe's personal belief is at all relevant to its allegation. There is no evidence that Sipe was speaking for Avon Rubber. Second, it is unclear what Sipe might have meant by Avon Rubber's alleged plan to "abandon the project." There is no evidence that this contemplated abandonment in fact resulted in Avon Rubber's inducing Bell Avon to breach the agreement. Finally, Sipe's relevance is attenuated by time. Sipe allegedly communicated his belief to Everett in the fall of 1996, but the license was not terminated until May 1, 1999.

Everett also points to a May 28, 1999, letter in which Benson allegedly "said . . .

that Spring Patents would not receive back all the technology that it was entitled to, but instead Avon Rubber would retain technology he considered was not Spring Patents' property." *See* Answer to Interrog. 4. In the letter, however, Benson does not mention Avon Rubber at all, and simply states that "Bell Avon ... will not send Spring any Bell Avon documents which are the property of Bell Avon or otherwise outside the scope of Paragraph 7.1 of the Agreement." *See* Letter from Dennis Benson to David Lee (May 28, 1999)("Benson Letter No. 1"), attached as Ex. F to Defendant's Motion to Dismiss (October 26, 2001). Moreover, Avon Rubber asserts that Benson was actually speaking on behalf of Bell Avon, even though Benson Letter No. 1 was written on Avon Rubber letterhead and lists Benson as the vice president/general counsel of Avon Rubber. In his deposition, Benson testified that he wrote Benson Letter No. 1 solely on behalf of Bell Avon. *See* Deposition of Dennis H. Benson (October 12, 2001)("Benson Dep.") at 70:9–13, 71:13–22, 72:25–73:2, attached as Ex. B to Defendant's Motion to Dismiss (October 26, 2001).

Avon Rubber explained why Benson used Avon Rubber letterhead and the title of Avon Rubber's general counsel, even though he was allegedly writing on Bell Avon's behalf. Benson stated that, although he was indeed general counsel to Avon Rubber, he spent virtually all his time rendering services to Avon Rubber's subsidiaries. *See id.* at 128:15–23. He said that Avon Rubber charged its subsidiaries for his work. *See id.* at 127:5–128:1. Benson explained that he had an attorney-client relationship with Bell Avon and was responsible for representing its interests. *See id.* at 80:22–83:7, 88:14–90:19. Although Benson did work for the subsidiaries, he stated that he had no title with respect to any of the subsidiaries; his only title was that of vice president and general

counsel of Avon Rubber. *See id.* at 129:18–23. Benson stated that he always used the Avon Rubber letterhead, even when writing on behalf of subsidiaries, *see id.* at 129:14–17, as he did not have Bell Avon stationery, *see id.* at 79:4–10. Avon Rubber's stationery includes the names of related companies, including Bell Avon. Spring has not responded to Avon Rubber's evidence with any affirmative proof of its own. Spring simply continues to assert baldly that "[Avon Rubber], through Benson, drafted, signed, and sent out [Benson Letter No. 1]." *See* Pl.'s Opp. at 11. This does not suffice.

Finally, Everett states that Samardich told him that Avon Rubber would invest money in projects that had a gross margin above 14 percent. *See* Answer to Interrog. 4. Everett believes that this alleged statement shows a possible motive for Avon Rubber to misappropriate Spring's technology, *see id.,* but this belief is nothing more than mere speculation. Even if Samardich made the statement, it is several steps removed from showing that Avon Rubber actually took any action related to the agreement.

Evaluating all the evidence, the court finds that Avon Rubber has successfully controverted Spring's allegation through its own evidence, and that Spring does not offer facts supporting the allegation. Accordingly, this allegation is insufficient to support personal jurisdiction over Avon Rubber.

4. *"AVON RUBBER COMMUNICATED WITH SPRING IN HAWAII AND NOTIFIED SPRING THAT THE LEAK–DETECTION TECHNOLOGY WAS UNMARKETABLE AND THAT BELL AVON HAD TERMINATED THE AGREEMENT."*

Spring has not carried its burden of proof as to this allegation because it has

not offered evidence to counter Avon Rubber's evidence that the communications in issue were made on behalf of Bell Avon, and not Avon Rubber. Spring points to Benson Letter No. 1 and a followup letter Benson wrote to David Lee on June 28, 1999 ("Benson Letter No. 2"), as evidence supporting its allegation. *See* Benson Letter No. 1; Letter from Dennis Benson to David Lee (June 28, 1999), attached as Ex. G to Defendant's Motion to Dismiss (October 26, 2001). Both letters, however, refer only to Bell Avon and never mention Avon Rubber. Additionally, for the reasons above, it appears that Benson was actually speaking on behalf of Bell Avon, even though both letters are on Avon Rubber letterhead and signed by Benson over his Avon Rubber title of vice president/general counsel. Spring has not responded to Avon Rubber's evidence with any affirmative proof of its own. Spring points out that Benson could not remember when he was told that the project was unmarketable, *see* Benson Dep. at 56:17–57:2, but this does nothing to refute Avon Rubber's evidence or support Spring's allegation. In sum, the court finds that Avon Rubber has successfully controverted Spring's allegation with its own evidence, and that Spring has failed to present facts supporting its allegation. Accordingly, this allegation is insufficient to support personal jurisdiction over Avon Rubber.

### 5. "AVON RUBBER MISLED SPRING."

It is unclear exactly how Avon Rubber allegedly misled Spring. The court assumes that this allegation is a composite of the other five allegations before the court. To that extent, the same arguments that apply to those allegations apply also to this allegation, and the court finds this allegation insufficient to support personal jurisdiction over Avon Rubber.

### 6. "AVON RUBBER INTERFERED WITH SPRING'S ABILITY TO DEVELOP, MARKET, AND SELL THE LEAK–DETECTION TECHNOLOGY."

This allegation appears to relate to Allegations 1, 2, and 4, addressed above. For the same reasons that those allegations fail to establish personal jurisdiction over Avon Rubber, this allegation similarly fails.

## V. CONCLUSION.

For the foregoing reasons, the court GRANTS Avon Rubber's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.