**WILLIAM ROSENSTEIN & SONS CO., Plaintiff,**

v.

**BBI PRODUCE, INC., Defendants.**

No. 3:CV–00–0628.

United States District Court, M.D. Pennsylvania.

Oct. 30, 2000.

---

Michael H. Roth, Scranton, PA, for Plaintiff.

James R. Apple, Charles F. Bennett, Joel E. Hausman, Apple and Apple, P.C., Pittsburgh, PA, for Defendant.

## MEMORANDUM

CAPUTO, District Judge.

Plaintiff William Rosenstein & Sons Co. (Rosenstein) brought this libel action against Defendant BBI Produce (BBI) on April 6, 2000, alleging that BBI injured its reputation in the business community by publishing defamatory statements to various members of the Florida strawberry industry. (Complaint, Doc. 1.) On June 14, 2000, BBI filed a motion to dismiss for lack of in-personam jurisdiction and failure to state a claim upon which relief can be granted, or alternatively for a transfer to the Middle District of Florida under 28 U.S.C. § 1404(a). (Doc. 4.) This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. However, because Rosenstein has failed to establish that this court has either specific or general jurisdiction over the person of BBI, the motion to dismiss for lack of personal jurisdiction will be granted.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant. Unlike subject matter jurisdiction, which may be challenged at any time, in-personam jurisdiction is an affirmative defense that is waived unless raised in a timely manner. *See* Fed. R. Civ. Pro. 12(g), 12(h)(1); *EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046, 1048 (3d Cir.1993) (citations omitted). In deciding a motion to dismiss for lack of in-personam jurisdiction, the court generally must take as true the allegations contained in the complaint. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir.1996) (citations omitted). However, it is the plaintiff that bears the

burden of proving, by affidavits or other competent evidence, that the court may properly assert jurisdiction over the defendant. *Id. See also North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d. Cir.1990).

 Unlike a Rule 12(b)(6) motion, a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir.1984). At least with respect to the facts on which jurisdiction depends, the allegations in the complaint cannot simply be assumed to be true, nor can the factual inquiry be deferred. The court must determine at the outset whether jurisdiction will lie, before jurisdiction is exercised. Consequently the plaintiff must respond to a personal jurisdiction defense with actual proofs, not simply with mere allegations, and may not rely on the pleadings alone to carry its burden of establishing the jurisdictional facts. *Id.* Accordingly, the plaintiff should generally be allowed limited discovery for the purpose of proving facts that would support the exercise of jurisdiction. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir.1994).

## BACKGROUND

Plaintiff Rosenstein is a fruit and vegetable wholesaler and distributor based in Scranton, Pennsylvania. (Doc. 1 ¶¶ 1, 6.) Defendant BBI is a Florida corporation engaged in the business of selling produce, principally strawberries. (Affidavit in Support of Motion to Dismiss, Doc. 6 ¶ 2.) Rosenstein alleges that in March of 2000 BBI sent a defamatory writing via facsimile to sixteen other sellers of strawberries in the Tampa, Florida region. (Doc. 1 ¶¶ 8–14.)

According to Rosenstein, this facsimile falsely stated, expressly or by necessary implication, that Rosenstein had engaged in unsavory business practices in the course of its last transaction with BBI. (Doc 1.) Specifically, Rosenstein alleges that the facsimile, sent to other strawberry vendors under the title "ALERT," asserted that Rosenstein had fraudulently refused to pay the agreed upon price for a shipment of strawberries it had received from BBI. (Doc. 1.) Rosenstein claims this facsimile has injured its good reputation and caused it significant business losses. (Doc. 1 ¶¶ 17–18.)

According to the affidavit of BBI Secretary Ronnie Young, BBI does not maintain any place of business, business operation or bank account in Pennsylvania, nor does it own land there. (Doc. 6 ¶ 4.) Further, "BBI does not have any employees, representatives, or agents in Pennsylvania, does not purposefully direct advertising to Pennsylvania, and has not applied for any qualification or license to do business in Pennsylvania." (Doc. 6 ¶ 4.) During the 1998–1999 sales season, BBI made only .0156% of its sales to purchasers in Pennsylvania, and only .0236% of its sales to Florida brokers buying for Pennsylvania clients. (Doc. 6 ¶ 10.) During the 1999–2000 sales season, BBI made only .0125% of its sales to purchasers within Pennsylvania, and only .0335% of its sales to Florida brokers buying for Pennsylvania clients. (Doc. 6 ¶ 11.) In 95% of BBI's transactions, BBI transfers the produce to the purchaser's carrier at BBI's place of business in Florida. (Doc. 6 ¶ 9.) According to Rosenstein, however, BBI is "a large shipper of strawberries" that sells strawberries throughout Pennsylvania. (Affidavit of Rosenstein, Doc. 8 ¶ 3.)

## DISCUSSION

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Products Company v. Colelli & Associates, Inc.*, 149 F.3d 197, 200 (3d Cir.1998) (quoting *Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992)). Pennsylvania's long-arm statute, set forth at 42 Pa. Cons. Stat. Ann. §§ 5301–22, authorizes Pennsyl-

vania courts to assert personal jurisdiction over nonresident defendants to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Id.* Thus the personal jurisdiction of a federal district court sitting in the Commonwealth of Pennsylvania is limited only by the strictures of constitutional due process.

■ The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over a defendant only if the defendant has certain "minimum contacts" with the state in which the court sits "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotation omitted).

> The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant and inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Predicating jurisdiction upon minimum contacts with the forum state enables a potential defendant to reasonably anticipate where he may be haled into court, and affords him the opportunity to adjust his conduct accordingly. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. For this reason, a plaintiff cannot act unilaterally to create the necessary contacts between the defendant and the forum; "minimum contacts" can be formed only by "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)).

Under the prevailing jurisdictional theory there are two types of personal jurisdiction: specific jurisdiction, which applies where the cause of action arose from the defendant's contacts with the forum; and general jurisdiction, which applies where the defendant's contacts with the forum, though not related to the plaintiff's cause of action, are nevertheless "continuous and systematic." *Mellon Bank,* 983 F.2d at 554. *See also Dollar Savings Bank v. First Security Bank of Utah,* 746 F.2d 208, 211 (3d Cir.1984). Defendant bases its motion to dismiss on the assertion that neither form of personal jurisdiction is present here. (Brief in Support of Motion to Dismiss, Doc. 5.)

### I. Specific Jurisdiction

42 Pa.C.S.A. § 5322(a)(4) extends in-personam jurisdiction to one who causes harm or tortious injury in Pennsylvania by an act or omission outside of Pennsylvania. *See Pennzoil Products Company,* 149 F.3d at 201. This is specific jurisdiction since only a cause of action "arising from" the act or omission in question may be asserted against the defendant. 42 Pa.C.S.A. § 5322(c). Since the reach of this provision has consistently been held to be coextensive with that of the Due Process Clause, *see Pennzoil Products Company,* 149 F.3d at 200, there is no need to make a separate statutory analysis. The critical inquiry is whether specific jurisdiction would offend the Due Process Clause.

■ The Third Circuit has set forth a two-pronged test for determining whether the exercise of specific jurisdiction is consistent with due process. First, the plaintiff must establish that the defendant has the constitutionally required "minimum contacts" with the forum. *See IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998). Second, the court must make a discretionary determination that the exercise of jurisdiction would "comport

with traditional notions of fair play and substantial justice." *Id.* (quotations omitted).

As noted above, for "minimum contacts" to be present the defendant must have purposely availed itself of the privilege of acting within the forum state, thus invoking the benefits and protections of forum law, such that it could have reasonably anticipated being haled into court there. *See Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183. Rosenstein avers that its tort cause of action arose from BBI's sales of strawberries to Pennsylvania purchasers, and in particular from BBI's infliction of tortious injury on a Pennsylvania-based corporation. Since it is undisputed that BBI's only contacts with Pennsylvania are its sales of strawberries and the business effects of its alleged defamation, specific jurisdiction will hinge on whether these constitute "minimum contacts."

In *Calder v. Jones,* the Supreme Court demonstrated how the in-state effects of an out-of-state intentional tort are to be treated in the minimum contacts analysis. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). "Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact on it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO,* 155 F.3d at 260. Consequently, this court must first consider whether BBI's strawberry sales in Pennsylvania are sufficient for minimum contacts; then, only if they do not constitute minimum contacts must *Calder* be applied.

■ BBI's Pennsylvania strawberry sales do not provide the minimum contacts required for due process. BBI sells just .04%—.05% of its produce to Pennsylvania purchasers. This small amount of business is not sufficient to put BBI on notice that it might be haled into court in Pennsylvania. Nor does BBI have any person, instrumentality, bank account,

property or business operation within the state of Pennsylvania. (Doc. 6.) "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder,* 465 U.S. at 788, 104 S.Ct. at 1486 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). While conducting .05% of its business within Pennsylvania might allow BBI to reasonably anticipate being haled into court there to defend a suit based on contaminated strawberries, or one for breach of the contract under which the strawberries were delivered to Pennsylvania, it is not enough to put BBI on notice that it might be compelled to answer in Pennsylvania for a separate act of libel performed in Florida. Other courts have held likewise on similar facts. *See, e.g, Orange Products, Inc. v. Winters,* 1995 WL 118461 (E.D.Pa.) (no specific jurisdiction in employment dispute despite fact that defendant sold 2.7% of its precision plastic balls within Pennsylvania); *Romann v. Geissenberger Mfg. Corp.,* 865 F.Supp. 255 (E.D.Pa.1994) (no specific jurisdiction over employment dispute despite fact that defendant GMC made 2%—4% of its auto-related sales within Pennsylvania); *Allied Leather Corp. v. Altama Delta Corp.,* 785 F.Supp. 494 (M.D.Pa.1992) (no specific jurisdiction in suit over breach of leather purchase contract, despite fact that defendant sold 1% of its footwear in Pennsylvania). Because BBI's sole contacts with Pennsylvania—its sale of .05% of its goods to Pennsylvania purchasers—would not allow it to reasonably anticipate being haled into a Pennsylvania court to defend a separate action performed in Florida, such sales do not themselves constitute minimum contacts.

This court must now apply *Calder v. Jones* to determine if the Pennsylvania effect of BBI's alleged Florida tort can enhance BBI's otherwise insufficient contacts. *See IMO,* 155 F.3d at 260. *Calder* involved facts somewhat akin to those in the instant case. There, actress Shirley

Jones brought a libel action against the editor of *The National Inquirer* after that publication ran an article alleging that Jones suffered from an alcohol problem. Calder had made no contact with the forum state California other than to travel there twice on unrelated matters. Further, the reporter who authored the article did the bulk of his research in Florida, merely phoning California for additional information. The sum of Calder's contacts with California were the approximately 600,000 copies of the *Inquirer* that were sold there weekly, and the effects of the alleged libel on Jones, a California resident. *See Calder*, 465 U.S. at 784–86, 104 S.Ct. at 1484–85. The Court found personal jurisdiction, noting:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources and the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.... [T]heir intentional, and allegedly tortious, actions were expressly aimed at California.... Under the circumstances, petitioners must "reasonably anticipate being haled into court there."

*Calder*, 465 U.S. at 788–90, 104 S.Ct. at 1486–87. Based on this language the Third Circuit has stated that a plaintiff invoking the *Calder* effects test "must show the following: 1) The defendant committed an intentional tort; 2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; 3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 265–66.

The present case is distinguishable from *Calder*, and its differences from *Calder* make it impossible for Rosenstein to satisfy the Third Circuit's three-part effects test. First, Rosenstein has not felt the brunt of the harm in Pennsylvania such that Pennsylvania can be said to be the focal point of that harm, as the second prong of the effects test requires. In *Calder*, it was critical that Jones' television career, indeed the entire television industry, was centered in California. Consequently, the bulk of the people with whom Jones was required to work were located in California. As a result, despite the fact that the *Inquirer* was distributed nationwide, the brunt of the harm to Jones' career was suffered in California.

In the instant case, however, BBI sent the allegedly libelous facsimile to other strawberry sellers located in Florida. It is clear that this facsimile would cause Rosenstein the greatest injury in Florida, among those from whom Rosenstein must purchase strawberries and other produce. Further, unlike in *Calder*, where 600,000 copies of the allegedly libelous article were sent to the forum state, here only one copy of the facsimile was sent into Pennsylvania, and that one to Rosenstein itself. Therefore, while Rosenstein may well suffer some harm within Pennsylvania, it is not true that it "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm." *IMO Industries*, 155 F.3d at 265–66. The focal point of Rosenstein's harm lies in Florida.

Rosenstein is also unable to satisfy the third prong of the effects test, which requires that it prove that BBI "expressly aimed" its tortious conduct at Pennsylvania such that Pennsylvania can be said to be the focal point of the tortious activity. The defendants in *Calder* sent more than twice as many copies of the allegedly de-

famatory article into California than they sent into any other state. *See Calder,* 465 U.S. at 785, 104 S.Ct. at 1484. Further, they knew that the brunt of the harm would be felt in California. *See Calder,* 465 U.S. at 788–90, 104 S.Ct. at 1486–87.

This same is not true in the present case. BBI did not send the facsimile to anyone in Pennsylvania other than Rosenstein itself. Rather, the facsimile was directed to sixteen strawberry sellers located in the Tampa, Florida area. In addition, BBI would have reasonably expected the resulting harm to Rosenstein to be centered among Florida produce vendors. Thus Rosenstein cannot show that BBI "expressly aimed" its allegedly tortious conduct at Pennsylvania such that Pennsylvania can be said to be the focal point of the tortious activity, as the third prong of the effects test requires.

Because Rosenstein is unable to satisfy the requirements of the effects test, the in-state effects of BBI's out-of-state act cannot enhance BBI's otherwise insufficient contacts. Therefore Rosenstein has failed to show BBI's minimum contacts with Pennsylvania, so that the exercise of specific jurisdiction over BBI by this court would offend the Due Process Clause of the Fourteenth Amendment.[1]

## II. General Jurisdiction

As noted above, even when the plaintiff's cause of action does not "arise out of" the foreign defendant's activities within the forum, general jurisdiction over that defendant is appropriate where it has "continuous and systematic" contacts with the forum. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The Third Circuit has held "that the plaintiff must show significantly more than minimum contacts to establish general jurisdiction. The nonresident's contacts must be continuous and substantial." *Provident Nat'l Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). *See also Bancroft & Masters, Inc. v. Augusta National Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000) ("The standard for establishing general jurisdiction is 'fairly high,' and requires that defendant's contacts be of the sort that approximate physical presence.")

As BBI's lacks even "minimum contacts" with Pennsylvania, *a fortiori* it lacks "continuous and substantial" contacts with the Commonwealth. It would be patently unfair to allow any and all plaintiffs to sue BBI in Pennsylvania, simply because BBI makes a small part of its strawberry sales to Pennsylvania purchasers. As the Ninth Circuit has noted, "engaging in commerce with residents of a forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft,* 223 F.3d at 1086. Further, where the plaintiff may easily secure specific jurisdiction over the defendant in the state where the cause of action arose, general jurisdiction is not necessary and courts should err on the side of finding no jurisdiction.

> [B]ecause specific jurisdiction has expanded tremendously, plaintiffs now may generally bring their claims in the forum in which they arose. As a result, obsolescing notions of general jurisdiction, which functioned primarily to ensure that a forum was available for plaintiffs to bring their claims, have been rendered largely unnecessary. Thus, broad constructions of general jurisdiction should be generally disfavored.

*Nichols v. G.D. Searle & Company,* 991 F.2d 1195, 1199 (4th Cir.1993). Here, Rosenstein should have little trouble securing

---

**1.** Comparing the "the relationship among the defendant, the forum, and the litigation" in the present case and in *Calder,* it is clear that it is far more foreseeable that one will be sued for libel in a state in which one sells 600,000 copies of *The National Inquirer* every week, than that one will be sued for libel in a state where one sells .04% of one's strawberries and where one hasn't published any defamatory writing.

jurisdiction over BBI in Florida. But the Due Process Clause will not permit general jurisdiction to lie in this court, as BBI's contacts with Pennsylvania cannot be fairly characterized as "continuous and substantial." [2]

### III. Conclusion

Plaintiff Rosenstein has not met its burden of proving that this court has in-personam jurisdiction, either specific or general, over Defendant BBI. Rosenstein has placed great reliance on the assertion that BBI "is a large shipper of strawberries" which "sells strawberries throughout Pennsylvania." (Doc. 8 ¶ 3.) This fact, however, will not suffice to enable this court to assert personal jurisdiction over BBI. Plaintiff states in its brief that "[i]f the court needs further evidence of Defendant's ongoing Pennsylvania enterprise, Plaintiff fully believes that two (2) depositions, five interrogatories and a document request would establish the necessary contact by Defendant with Pennsylvania." (Brief in Opposition to Defendant's Motion, Doc. 7 at 9.) While it is true that a plaintiff should be allowed discovery of relevant jurisdictional facts, *see Renner*, 33 F.3d at 283, Rosenstein has not made a proffer explaining what it wishes to discover and how this would help overcome the great weight of evidence supporting a finding that this court lacks jurisdiction. Therefore, this court declines to permit discovery on the issue of jurisdiction.

As Plaintiff Rosenstein has failed to carry its burden of proving that this court may extend personal jurisdiction over Defendant BBI consistently with the Due Process Clause of the Fourteenth Amendment, Defendant's motion to dismiss under Rule 12(b)(2) will be granted. An appropriate order will follow.

---

**2.** In finding that Plaintiff Rosenstein should not have brought its case in the Middle District of Pennsylvania, this court implies no opinion on the merits of Rosenstein's claims against BBI.