Motion for Rehearing Overruled; Opinion of September 26, 2002,
Withdrawn; Affirmed in part, Reversed and Rendered in part, and









Motion for Rehearing Overruled; Opinion of September
26, 2002, Withdrawn; Affirmed in part, Reversed and
Rendered in part, and Opinion on Motion for Rehearing filed December 31, 2002.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

 

NO.
14-01-01199-CV

 

D.H. BLAIR INVESTMENT BANKING CORP., LESLIE DANZIGER, and
DONALD LAWSON, Appellants

 

V.

 

MICHAEL J. REARDON, ALBERT E. RAIZNER, JOHN ABUKHALIL, RICHARD
A. GOLDFARB, MILTON NIRKEN, OSAMA MIKHAIL, WELDON GUEST, MORDECHAJ BLANKFELD, HERMAN
LAPIN, JAMES T. FOX, NORMAN RAPPAPORT, MARK BERGER, CAROL SUE FINKELSTEIN,
GREGORIO CASAR, RANDOLPH W. EVANS, MARTIN BARRASH, RICHARD M. BARRETT, M.D.
P.A., DANIEL BARRETT, CYNTHIA A. BARRETT, ROBERT GORDON, AS TRUSTEE OF THE ALAN
J. AND SHERRI GORDON EISENMAN FAMILY TRUST, LARRY I. LIPSHULTZ, GOLDFAM, LTD.,
WILLIAM LIPSKY, TOBIAS SAMO, GENE LANDON, MICHAEL MUNDAY, DEBORAH
BRAND-FAINSTEIN, HAROLD L. HARRIS, GEOFFREY D. HARRIS, ADRIENNE HARRIS, RALPH
G. HARRIS, MAZEL, INC., SHELDON HARRIS, HARVEY FUSON, RICHARD D. KLAUSMEIER AND
KAY L. KLAUSMEIER, AS TRUSTEES OF THE R.D. & K.L. KLAUSMEIER TRUST, RICHARD
D. KLAUSMEIER, HARLAN STEIN, RICHARD H. STEIN, EDGAR GOLDBERG, BOGUSLAW
GODLEWSKI, CHRISTOPHER GODLEWSKI, RONALD GOLDEN, JAMES ALEXANDER, ROBERT K. ZURAWIN,
MOHAMED O. JEROUDI, and THOMAS J. MIMS,
Appellees

 



On
Appeal from the 113th District Court

Harris County, Texas

Trial
Court Cause No. 00-29461



 








O
P I N I O N   O N   M O T I O N  
F O R   R E H E A R I N G

We
withdraw our opinion of September 26, 2002, and substitute the following
opinion.  This is an interlocutory appeal
from the denial of a special appearance filed by two nonresident individuals
and a nonresident investment banking corporation.  We conclude the trial court properly
exercised personal jurisdiction over the individuals, and thus the court did
not err in denying their special appearances. 
However, we find the trial court erred in denying the corporation=s
special appearance.  Accordingly, we
reverse and render judgment dismissing appellees= claims against the corporation.  We affirm the remainder of the trial court=s
order.

                            I.  Factual
and Procedural Background

LightPath
Technologies, Inc. is a manufacturer and marketer of optical glass and other
products used in the telecommunications industry.  Over a period of approximately ten years,
LightPath solicited investments from various sources, including appellees, each
of whom received LightPath stock.  In
1995, LightPath prepared to sell more of its stock through an initial public
offering (IPO).  LightPath contracted
with D.H. Blair Investment Banking Corp. to serve as underwriters for the
IPO.  As a condition of the IPO,
LightPath sought to recapitalize by reducing the number of currently
outstanding shares from 5.5 million to 1 million, thus increasing the value of
each individual share.  This required
LightPath=s current shareholders to approve a Areverse
stock split@ whereby every 5.5 shares of AClass A@ stock would be redeemed for one share.  In a proxy statement seeking approval for the
1-for-5.5 reverse split, LightPath also announced its intent to distribute a
special dividend of AClass E@ shares to existing shareholders.  These shares apparently had no value but
would automatically convert to Class A shares if LightPath achieved certain
financial milestones as set forth in the proxy statement.  LightPath=s shareholders approved the recapitalization, and the IPO went
forward.  However, the financial
milestones set forth in the proxy statement were never met, and the Class E
shares were never converted to Class A shares.








Appellees
filed suit against LightPath; D.H. Blair; Donald Lawson, LightPath=s
former president and CEO; and Leslie Danziger, the founder and a former CEO of
LightPath.[1]  Appellees brought claims for fraud, negligent
misrepresentation, breach of fiduciary duty, and conspiracy.  The investors claim they were misled about
the financial status of LightPath and that the defendants knew the milestones
necessary for conversion of the Class E shares would never be achieved.  They further allege they would not have
consented to the recapitalization and subsequent IPO but for these
misrepresentations.  D.H. Blair, Lawson,
and Danziger jointly filed a special appearance, asserting the trial court
lacked personal jurisdiction over them. 
The trial court conducted a hearing and ultimately denied the special
appearance.  Appellants brought this
interlocutory appeal.  See Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(7) (Vernon Supp. 2002).

                                                  II.  Standard of
Review

The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the personal jurisdiction of a Texas court.  BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  A defendant challenging the court=s
assertion of personal jurisdiction must negate all jurisdictional bases.  Id.

Whether
a court has personal jurisdiction over a defendant is a question of law, which
we review de novo.  Id. at 794. 
However, the trial court frequently must resolve questions of fact
before deciding the jurisdiction question. 
Id.  When, as here, the
trial court does not issue findings of fact and conclusions of law with its
special-appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied.  Id. at 795. 
When the appellate record includes both the reporter=s
and clerk=s records, however, these implied findings are not conclusive
and may be challenged for legal and factual sufficiency.  Id.








                                               III.  Personal
Jurisdiction

The Texas long-arm statute authorizes Texas courts to exercise
jurisdiction over a nonresident defendant that does business in Texas.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 17.041B.045 (Vernon 1997 & Supp. 2002).  The broad language of the Adoing
business@
requirement in section 17.042 permits the statute to reach as far as the
federal constitutional requirements of due process will allow.  Guardian Royal Exch.
Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.
1991).  Thus, we rely on precedent
from the United States Supreme Court and other federal courts, as well as Texas
decisions, to determine whether the assertion of personal jurisdiction is
consistent with the requirements of due process.  BMC Software, 83
S.W.3d at 795.

Personal
jurisdiction over a nonresident defendant is constitutional when two conditions
are met: (1) the defendant has established minimum contacts with the forum
state, and (2) the exercise of jurisdiction comports with traditional notions
of fair play and substantial justice.  Id.  A nonresident defendant that has Apurposefully
availed@
itself of the privileges and benefits of conducting business in the forum state
has sufficient contacts to confer personal jurisdiction.  Id. (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474B76, 105 S. Ct. 2174, 2183B84 (1985)).  A defendant
should not be subject to jurisdiction based on random, fortuitous, or
attenuated contacts.  Id. (citing Burger
King, 471 U.S. at 475, 105 S. Ct. at 2183). 
Furthermore, the nonresident=s contacts must result from its own purposeful activity and not
the unilateral activity of the plaintiff or a third party.  See Guardian Royal, 815 S.W.2d
at 227. 

The
defendant=s contacts can give rise to either specific or general
jurisdiction.  Specific jurisdiction is
established if the plaintiff=s cause of action arises out of or relates to the defendant=s
contact with the forum state.  Id.  In contrast, general jurisdiction exists when
there are continuous and systematic contacts between the defendant and the
forum, even if the plaintiff=s claim does not arise from or relate to activities conducted
within the forum state.  Id. at 228.








                                                                 A.  D.H. Blair

We
begin by examining the trial court=s denial of D.H. Blair=s special appearance.  In
its petition, appellees alleged the following facts as support for the trial court=s
assertion of jurisdiction over D.H. Blair: (1) D.H. Blair committed tortious
acts outside of Texas that it knew would have effects within Texas; (2) two of
D.H. Blair=s principals, Martin Bell and J. Morton Davis, served as
directors of a company with its principal office in Texas and attended board
meetings in Texas; and (3) D.H. Blair engaged in discussions with multiple
Texas residents about possible financings and entered into contracts with two
or three companies located in Texas. 
D.H. Blair contends it has successfully negated all bases for both
specific and general jurisdiction.

                                                          1.  Specific Jurisdiction








Specific
jurisdiction exists when the plaintiff=s claims arise out of or relate to the nonresident defendant=s
contacts with Texas.  Guardian Royal,
815 S.W.2d at 230. 
These contacts, in turn, must arise from action or conduct by the
defendant that was purposefully directed toward Texas.  Id. 
Appellees assert they established specific jurisdiction because D.H.
Blair conceived of and participated in the allegedly fraudulent
recapitalization of LightPath shares that resulted in damages to numerous
LightPath investors in Texas.  Appellees
concede that none of D.H. Blair=s alleged activities actually occurred in Texas.  D.H. Blair made no direct representations to
appellees in Texas (or elsewhere), and none of the discussions or negotiations
between D.H. Blair and LightPath relating to the recapitalization took place in
Texas.  Nevertheless, appellees claim
personal jurisdiction is appropriate because D.H. Blair knew its actions would
have an effect on Texas residents.  For
purposes of our jurisdictional analysis, we presume the trial court impliedly
found that D.H. Blair possessed such knowledge.[2]  Accordingly, we must decide whether a Texas
court may assert personal jurisdiction over D.H. Blair based solely on D.H.
Blair=s
knowledge that its acts, all of which occurred outside Texas, would affect
individuals in Texas.  We conclude it may
not.

D.H.
Blair was not involved in any way with soliciting and selecting LightPath=s
investors.  Nothing suggests that D.H.
Blair=s
conduct was in any way directed toward Texas shareholders as distinguished from
LightPath=s shareholders in general. 
Cf. Michel v. Rocket Eng=g Corp., 45
S.W.3d 658, 674 (Tex. App.CFort
Worth 2001, no pet.) (concluding that advertising in a
nationally distributed publication with subscribers in Texas is not an activity
purposefully directed at Texas).  Thus,
whether or not D.H. Blair knew many LightPath investors resided in Texas, its
only contact with the state of Texas was the fortuitous result of LightPath=s
conduct in soliciting those investors. 
It is well-settled that a defendant cannot be haled into a Texas court
based on the unilateral activity of a third party.  American Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002); see also Burger King, 471
U.S. at 475, 105 S. Ct. at 2183.  We
cannot say D.H. Blair=s mere knowledge that its actions would have effects
in Texas equates to purposefully availing itself of the privileges and benefits
of conducting business in Texas.  Accordingly,
we conclude D.H. Blair has negated appellees= allegation supporting specific jurisdiction.

                                                          2.  General Jurisdiction

Appellees
also contend D.H. Blair is subject to general jurisdiction.  General jurisdiction may only be exercised
when the nonresident defendant=s contacts with Texas establish Aa pattern of continuing and systematic activity.@  Coleman, 83 S.W.3d
at 809.  The minimum-contacts
analysis for general jurisdiction is more demanding than for specific
jurisdiction and requires a showing that the defendant conducted substantial
activities within the forum.  Guardian
Royal, 815 S.W.2d at 228.

In
support of its special appearance, D.H. Blair presented evidence of the
following facts, which appellees do not dispute:

!         D.H. Blair is a Delaware corporation
with its offices located in New York.








!         D.H. Blair is not licensed or qualified
to do business in Texas.

!         D.H. Blair has no agent or
representative for service of process in Texas.

!         D.H. Blair has never maintained an
office or facility in Texas, nor has it ever owned or rented any real property
in Texas.

!         D.H. Blair has no employees,
salespersons, or sales agents in Texas.

!         D.H. Blair has never directed any
advertising toward Texas.

!         D.H. Blair
maintains no bank account, mailing address, or telephone listing in Texas.

Appellees
contend jurisdiction is proper based on (1) D.H. Blair=s
alleged activities giving rise to this suit; (2) its negotiations with eight
companies with offices in Texas, some of which resulted in D.H. Blair
contracting with and acquiring a stake in a Texas company; and (3) D.H. Blair=s
ownership interest in a company with its principal offices in Texas and
participation by D.H. Blair=s sole shareholder and vice-chairman on that company=s
board.[3]  As we note above, none of D.H. Blair=s
actions giving rise to appellees= claims were purposefully directed at Texas.  Therefore, we must determine whether D.H.
Blair=s
other contacts with Texas support the assertion of jurisdiction.

In
response to the special appearance, appellees presented evidence of the
following, which we presume the trial court found to be true:

!         D.H. Blair owns approximately 38.5% of
the stock in Venus Exploration, a Delaware corporation with its principal
offices in Texas. J. Morton Davis, D.H. Blair=s
sole shareholder, has been a director of Venus since 1986.  Martin Bell, D.H. Blair=s
vice-chairman, has served on Venus=s
board since 1991 and has traveled to Texas for board meetings two or three
times.








!         In 1993, D.H. Blair served as
underwriters for a public offering and private placement on behalf of
TransAmerican Waste Industries, a Delaware company with offices in Texas.  D.H. Blair negotiated by telephone with and
sent a letter of intent to TransAmerican=s
chairman in Texas.  D.H. Blair also
transmitted and received written communications between New York and Texas
regarding consent agreements and a confidentiality agreement.  D.H. Blair acquired options to purchase 1400
units of convertible debentures from TransAmerican.

!         Also in 1993, D.H. Blair signed a
letter of intent with CKS Acquisitions to invest $6 million in CKS for the
purpose of acquiring several Texas companies. 
D.H. Blair delivered the signed letter of intent to CKS=s
chairman in Texas.  However, this deal
was never completed.

!         In 1994, D.H. Blair signed a letter of
intent with Cytoclonal Pharmaceutics, a Delaware company with its executive
offices in Texas, to serve as placement agent for a private placement
offering.  D.H. Blair negotiated the deal
with Cytoclonal=s CEO by letter
and telephone between New York and Texas. 
In addition, D.H. Blair=s
attorneys may have traveled to Texas in connection with this transaction.  As of August 1995, D.H. Blair owned options
to purchase over 350,000 shares, or approximately 5%, of Cytoclonal=s
common stock following its initial public offering.  At some point, D.H. Blair purchased 58,333
shares of Cytoclonal stock.

!         Between 1993 and
1997, D.H. Blair negotiated by telephone and by letter with at least four other
companies in Texas.  In at least three
instances, D.H. Blair delivered a proposed letter of intent to the company=s
chairman or CEO in Texas.  In one case,
D.H. Blair entered into a confidentiality agreement, which D.H. Blair signed in
New York and faxed to Texas.

To the
extent these contacts are directed at Texas, we conclude they are too sporadic
to constitute the kind of continuous and systematic general business activity
necessary to justify the assertion of general jurisdiction.  See Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 416B18, 104 S. Ct. 1868, 1873B74 (1984) (concluding general jurisdiction did not exist over a
defendant that purchased substantial amounts of goods, equipment, and services
from a Texas company, sent personnel into Texas for training and consultation,
accepted checks drawn on a Texas bank, and sent its CEO to Texas to negotiate a
contract).  Accordingly, we find there is
no basis for an assertion of general jurisdiction.








Because
D.H. Blair did not have sufficient minimum contacts with Texas to subject it to
the trial court=s jurisdiction, we conclude the trial court erred in denying
D.H. Blair=s special appearance.

                                                       B.  Danziger and Lawson

With respect to Danziger and Lawson, appellees alleged the
following jurisdictional facts: (1) both Danziger and Lawson visited Texas on
multiple occasions in connection with shareholder and director meetings, at
which they solicited appellees= investments and made misrepresentations; (2) they visited
Texas on multiple occasions for personal visits; (3) Lawson owns a home and
pays property taxes in Texas, maintains utility and related accounts on that
home in Texas, and owns a car with license plates registered in Texas; and (4)
Danziger and Lawson engaged in actions outside of Texas they knew would have
effects in Texas.  Danziger and Lawson
maintain they have negated both specific and general jurisdictional bases.

                                                          1.  Specific Jurisdiction

Neither Danziger nor Lawson dispute that their alleged actions
were directed toward Texas.  Nor do they dispute that
appellees= claims arise out of or relate to their alleged conduct.  Instead, they claim they performed the acts
alleged by appellees solely on behalf of LightPath and not in their individual
capacities.  Citing the Afiduciary
shield@
doctrine, Danziger and Lawson claim that these contacts cannot be imputed to
them individually to establish personal jurisdiction.








In
Vosko v. Chase Manhattan Bank, N.A., this court stated that Ajurisdiction
over an individual generally cannot be based on jurisdiction over a corporation
with which he is associated unless the corporation is the alter ego of the
individual.@  909 S.W.2d 95, 99 (Tex.
App.CHouston [14th Dist.] 1995, writ denied).  We cited Stuart v. Spademan, a Fifth
Circuit decision that described the Afiduciary-shield doctrine@ as providing that Aan individual=s transaction of business within the state solely as a
corporate officer does not create personal jurisdiction over that individual.@  772 F.2d 1185, 1197 (5th
Cir. 1985).  Danziger and Lawson
urge us to interpret the doctrine so that any actions they took while serving
as officers of LightPath cannot be considered in determining whether they are
subject to personal jurisdiction.  We
decline to do so.

In
Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984), the Supreme Court
stated that, although individuals= contacts with a forum are not to be analyzed based on their
employer=s
activities in that forum, Atheir status as employees does not somehow insulate them from
jurisdiction.@  465
U.S. at 790, 104 S. Ct. at 1487. 
Based on this language in Calder, Texas courts have concluded
there is no blanket protection from jurisdiction simply because the defendant=s
alleged acts were done in a corporate capacity. 
See Brown v. General Brick Sales Co., 39 S.W.3d 291, 300
(Tex. App.CFort Worth 2000, no pet.); General Elec. Co. v. Brown &
Ross Int=l Distribs., Inc.,
804 S.W.2d 527, 532 (Tex. App.CHouston [1st Dist.] 1990, writ denied); see also Smith
v. Lanier, 998 S.W.2d 324, 334B35 (Tex. App.CAustin 1999, pet. denied) (AAn agency relationship does not shield an individual from
jurisdictional contacts with a state . . . .@).  Instead, A[e]ach
defendant=s contacts with the forum State must
be assessed individually.@  Calder,
465 U.S. at 790, 104 S. Ct. at 1487.

Here,
appellees allege both Danziger and Lawson made false representations at
meetings in Texas for the purpose of inducing Texas residents to approve
LightPath=s recapitalization and subsequent IPO.  In a case with similar facts, this court
refused to apply the fiduciary-shield doctrine to protect a defendant from
personal jurisdiction based on alleged misrepresentations that were directed
into Texas and foreseeably relied on in Texas, despite the defendant=s
claim that he acted only in a corporate capacity.  See Shapolsky v. Brewton, 56
S.W.3d 120, 133B34 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  We
likewise hold that the fiduciary-shield doctrine does not apply in this case.








We
conclude Danziger and Lawson have not satisfied their burden of negating the
assertion of personal jurisdiction based on specific jurisdiction.  Because a nonresident defendant must
successfully negate all bases of personal jurisdiction to prevail in a special
appearance, we need not consider appellees= jurisdictional allegations based on general jurisdiction.  See Shapolsky, 56 S.W.3d at 135.

                                               2.  Fair Play and Substantial Justice

Having
concluded that Danziger and Lawson had sufficient contacts with Texas, we next
consider whether the exercise of jurisdiction over them offends traditional
notions of fair play and substantial justice. 
See Guardian Royal, 815 S.W.2d at 231.  The following factors, when appropriate,
should be considered: (1) the burden on the defendant, (2) the interests of the
forum state in adjudicating the dispute, (3) the plaintiff=s
interest in obtaining convenient and effective relief, (4) the interstate
judicial system=s interest in obtaining the most efficient resolution of
controversies, and (5) the shared interest of the several states in furthering
fundamental substantive social policies. 
Id.  Only in rare cases
will the exercise of jurisdiction not comport with fair play and substantial
justice when, as here, the nonresident defendant has purposefully established
minimum contacts with the forum.  Id.








Danziger
and Lawson claim the exercise of jurisdiction over them is inconsistent with
traditional notions of fair play and substantial justice because (1) they would
be unfairly burdened if forced to defend in Texas, (2) neither Texas nor the
interstate judicial system has an interest in having this dispute litigated in
Texas, and (3) appellees have no interest in maintaining their lawsuit in
Texas.  While Danziger and Lawson may be
subjected to some burden to travel to Texas, this purported burden would not be
so great as to be inconsistent with the constitutional guarantees of due
process.  This is particularly true given
the fact that some of the allegedly tortious acts committed by Danziger and Lawson
occurred while both were physically present in Texas.  The state of Texas has an obvious interest in
providing a forum for resolving disputes involving its citizens, particularly
those disputes in which the defendant allegedly committed a tort in whole or in
part in Texas.  Shapolsky, 56 S.W.3d at 135. 
Finally, we find it incredible to suggest that appellees, the
overwhelming majority of whom are Texas residents, have no interest in
resolving their dispute in a Texas forum based solely on the fact that the
recapitalization Awas effectuated outside of Texas.@  We conclude the
exercise of personal jurisdiction over Danziger and Lawson comports with
traditional notions of fair play and substantial justice.

                                                           IV.  Conclusion

We
conclude D.H. Blair did not have sufficient minimum contacts with the state of
Texas to support an assertion of personal jurisdiction; however, Danziger and
Lawson failed to negate all bases for the trial court=s
exercise of personal jurisdiction over them. 
Accordingly, we reverse the portion of the trial court=s
order denying D.H. Blair=s special appearance and render judgment dismissing appellees=
claims against D.H. Blair.  The remainder
of the trial court=s order is affirmed.

 

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

 

 

Judgment rendered and Opinion on Motion
for Rehearing filed December 31,2002.

Panel consists of Justices Yates, Seymore,
and Guzman.

Publish C Tex. R.
App. P. 47.3(b).

 











[1]  Appellees also
sued Milton Klein, a Texas resident and a former director of LightPath.  Neither Klein nor LightPath is a party to
this appeal.





[2]  Although D.H.
Blair could have challenged the trial court=s
implied finding for factual and legal sufficiency, no such challenge was made.





[3]  It is
undisputed that none of the negotiations and subsequent transactions identified
by appellees nor the board participation of D.H. Blair=s principals have any connection to appellees= claims in this case.