**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOE ANZURES,

     Plaintiff - Appellant,

v.

FLAGSHIP RESTAURANT GROUP,
a Nebraska company; NICK HOGAN,

     Defendants - Appellees.

No. 15-1332

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-01277-REB-CBS)**
_____

Submitted on the briefs:[*]

Patrick D. Vellone, Jordan D. Factor, Allen & Vellone, P.C., Denver, Colorado, for
Plaintiff-Appellant.

Michael J. Roche, Lathrop & Gage, LLP, Denver, Colorado; Scott D. Jochim, Croker,
Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., Omaha, Nebraska, for
Defendants-Appellees.
_____

Before **KELLY**, **PORFILIO**, and **BALDOCK**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

_____

Joe Anzures appeals from the district court's dismissal of his case for lack of personal jurisdiction over defendants. We have appellate jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Anzures is a Colorado resident, and defendants Nick Hogan and Flagship Restaurant Group are Nebraska residents. Anzures and non-party Jared Mitilier (a California resident) contacted defendant Hogan in Omaha, Nebraska, about starting a business venture (all three had been high-school classmates in Nebraska). The proposed business was to broker the sale of pre-paid financial products akin to pre-loaded debit cards. Hogan agreed, and Industria Payment Solutions, LLC was formed as a Nevada LLC with both its registered office and registered agent in Nevada.

Industria had three members: Anzures, Mitilier, and Flagship, in which Hogan held a 31.4% ownership interest.[1] Industria's operating agreement listed Industria's principal place of business as being at Flagship's Omaha, Nebraska address, and the agreement was to be governed by Nevada law. Flagship agreed to contribute $500,000 to Industria in exchange for a 50% ownership interest in Industria and was, according to Hogan, a passive investor. Neither Anzures nor Mitilier contributed any

---

[1] Flagship is a Nebraska LLC and is managed by one of its members, Progressive Enterprises, Inc., which is a Nebraska corporation. Hogan was Progressive's Chief Executive Officer. Both Flagship and Progressive have their principal places of business in Omaha, Nebraska.

2

money, but each took a 25% ownership interest in Industria. Anzures, who had past experience in payment-solutions products, was put in charge of day-to-day operations and named presiding manager; Hogan and Mitilier were also managers. Mitilier's role was to provide his experience marketing the financial products to gaming institutions.

Anzures was Industria's only employee. He set to work attempting to broker a deal with Western Union in Colorado. But a few months after Industria's formation, Hogan allegedly attempted to squeeze Anzures out so Flagship could increase its ownership interest. To that purported end, Hogan allegedly made a series of false accusations to Mitilier that Anzures was secretly assisting one of Industria's competitors, and he tried to persuade Mitilier to vote in favor of removing Anzures from Industria and instituting litigation against Anzures. Hogan also allegedly threatened that Flagship would not provide funding to Industria unless Anzures agreed to take significantly less compensation.

Anzures agreed to take less compensation, but when Flagship did not follow through on its promise to make a contribution to Industria (it appears that Flagship never made any capital contribution to Industria), Anzures filed suit in Colorado state court. Defendants—Hogan and Flagship—removed the case to federal court based on diversity jurisdiction. In an amended complaint, Anzures asserted a breach of fiduciary duty claim against Flagship and Hogan, and three other claims against Flagship—fraud, negligent misrepresentation, and breach of contract. Defendants then moved to dismiss the amended complaint due to lack of personal jurisdiction.

After allowing limited discovery (including the deposition of Hogan) on the jurisdictional issue, a magistrate judge recommended granting the motion to dismiss. Over Anzures's objections, the district court agreed. This appeal followed.

**DISCUSSION**

We review de novo a district court's dismissal for lack of personal jurisdiction over the defendants. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Because the district court decided the jurisdictional issue based only on the documentary evidence, Anzures must only make a prima facie showing of personal jurisdiction. *See id.* We must resolve any factual disputes in Anzures's favor. *See id.*

The test for personal jurisdiction involves two questions—"whether any applicable statute authorizes the service of process on defendants" and "whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Id.* Because the controlling statute (Colorado's long-arm statute) "confers the maximum jurisdiction permissible consistent with the Due Process Clause[,] . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Id.* And to satisfy the constitutional component, "defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

4

On appeal, Anzures does not challenge the district court's ruling that it lacked general jurisdiction over defendants. His focus is solely on whether the district court had specific jurisdiction, which depends "on the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). Anzures argues that the district court had specific jurisdiction over defendants because his claims arise out of their investment in, and breach of duties through, Industria, which he contends was a Colorado-based company. In support, he notes that Industria's business operations were primarily in Colorado—he was its sole employee, company business cards contained a Colorado address and telephone number, and his primary activity was an effort to broker a deal with Colorado-based Western Union. He also points out that, in contrast, Industria did not have separate office space in Nebraska or its name on the door, and it had no dedicated, Nebraska-based personnel or computer, server, or file drive. He also notes that Industria used Colorado-based counsel to draft the company's operating agreement, and Hogan regularly engaged in telephone and email communications with those attorneys regarding those documents. Anzures further asserts that the injuries he sustained derived entirely from defendants' conduct within Industria and that they knew he would sustain those injuries in Colorado.

Anzures contends that these contacts are similar to those the Supreme Court found sufficient to confer personal jurisdiction in *Calder v. Jones*, 465 U.S. 783 (1984), and those we considered sufficient in *Dudnikov*, where we relied heavily on *Calder*. Both *Calder* and *Dudnikov* were tort cases, so we will first analyze whether

5

the district court had personal jurisdiction over defendants with regard to Anzures's tort claims. *See Dudnikov*, 514 F.3d at 1071 (explaining that minimum contacts "can appear in different guises" depending on whether tort or contract claims are at issue).

In the tort context, we generally consider "whether the nonresident defendant 'purposefully directed' its activities at the forum state." *Dudnikov*, 514 F.3d at 1071. As *Dudnikov* interpreted *Calder*, purposeful direction exists when there is "an intentional action . . . expressly aimed at the forum state . . . with [the] knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. In addition, a plaintiff's injuries must "'arise out of' [the] defendant's forum-related activities." *Id.* at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). And in that regard, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121 (emphasis added). Significantly, the relationship between a defendant and the forum State "must arise out of contacts that 'the defendant *himself*' creates with the forum State," and those contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," such as a plaintiff. *Id.* at 1122 (quoting *Burger King Corp.*, 471 U.S. at 475). Thus, "a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* at 1119 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). "[T]he mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. "Due process requires that a

6

defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123 (quoting *Burger King Corp.*, 471 U.S. at 475).

Judged against these principles, we conclude that the district court lacked specific jurisdiction over Flagship and Hogan. Anzures's injuries arise out of defendants' alleged activities concerning Industria's internal financial and ownership structure—allegedly fraudulent promises and negligent misrepresentations concerning Flagship's capital contribution, an effort to reduce Anzures's compensation, and Hogan's allegedly false accusations about Anzures's loyalty to Industria. Anzures's sales activities in Colorado on behalf of Industria, which he emphasizes as the basis for finding personal jurisdiction over defendants, are not the subject matter of this case, so they are not jurisdictionally related to the tort claims. Nor did Anzures's injuries arise from the use of Colorado counsel to draft Industria's operating agreement, so we see no basis for personal jurisdiction over either defendant based on Hogan's contacts with Industria's attorneys regarding the preparation of those documents.

Furthermore, Anzures (together with Mitilier) reached out to Hogan in Nebraska to form Industria, and Industria was created as a Nevada LLC, listed its principal place of business as being in Nebraska, and maintained its corporate office and bank account in Nebraska. Hence, the facts of record do not show that either defendant expressly aimed any conduct at Colorado regarding the formation or

7

alleged alteration of Industria's funding or ownership structure or the reduction of Anzures's compensation. In short, defendants' suit-related conduct did not create any meaningful contacts with Colorado itself, and the fact that Anzures was affected in Colorado (because he resides there) is insufficient to authorize personal jurisdiction over defendants. *See Walden*, 134 S. Ct. at 1126. Neither Hogan nor Flagship had any reasonable expectation of being haled into court in Colorado to answer for any activities related to the funding of Industria, Industria's ownership structure, or Anzures's compensation. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

The jurisdictional analysis of Anzures's tort claims is distinguishable from that in *Calder* and *Dudnikov*, upon which Anzures heavily relies. In each of those cases, it was not only important that the plaintiff felt the effects of the defendants' actions in the forum state but that the defendants' actions targeted the forum state. In *Calder*, the Supreme Court concluded that there was personal jurisdiction in California over Florida-based defendants who wrote an allegedly libelous news story concerning the California activities of a California resident—actress Shirley Jones— that "impugned [her] professionalism" in California, the state where her "television career was centered." *Calder*, 465 U.S. at 788. "The article was drawn from California sources, and the brunt of the harm, in terms both of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.*

8

at 788-89. Thus, "California [was] the focal point both of the story and of the harm suffered," and the defendants' "actions were expressly aimed at California." *Id.* at 789. Here, for reasons we have already stated, Colorado was not the focal point of defendants' suit-related activities.

Similarly, in *Dudnikov*, this court concluded that personal jurisdiction existed in Colorado over non-Colorado defendants who sent a notice of claimed copyright infringement to eBay in California in a successful effort to halt a Colorado company's online auction of allegedly infringing items. *See Dudnikov*, 514 F.3d at 1067-68. In relevant part, we reasoned that the defendants, who we assumed knew that plaintiffs' business was in Colorado, acted "with the ultimate purpose of cancelling plaintiffs' auction in Colorado" and so "express[ly] aim[ed]" their conduct at Colorado. *Id.* at 1075. We noted that the defendants' actions were "performed for the very purpose of having their consequences felt in the forum state." *Id.* at 1078 (internal quotation marks omitted). In contrast here, defendants' actions regarding Industria's funding and ownership and Anzures's compensation were not expressly aimed at Colorado because Industria's entity ties were to Nevada and Nebraska. As noted, its sales ties to Colorado are not the subject matter of Anzures's claims, so they have no place in the jurisdictional calculus. Furthermore, *Walden* reinforces that personal jurisdiction may not rest solely on the fact that a defendant's conduct affected the plaintiff in the forum state, *see Walden*, 134 S. Ct. at 1126; *see also Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be

9

based on interaction with a plaintiff known to bear a strong connection to the forum state.").

Turning to Anzures's breach-of-contract claim against Flagship, we reach the same conclusion that personal jurisdiction is lacking.[2] "[I]n contract cases . . . we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov*, 514 F.3d at 1071. Here, Flagship did not purposefully avail itself of such privileges with regard to Industria's creation, funding, and ownership because Industria's members agreed to form Industria as a Nevada LLC, that its principal place of business would be (albeit, perhaps, nominally) in Nebraska, and that Industria's operating agreement—the contract at issue in Anzures's breach-of-contract claim— would be construed under Nevada law. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 n.7 (10th Cir. 1995) (choice-of-law provision implicating "the law of another jurisdiction . . . is . . . relevant in assessing the parties' relationship and expectations"). There is nothing to suggest that Colorado had any particular role in the structure of the parties' relationship regarding Industria's initial financing and ownership or in the alleged actions Flagship took to breach its contractual obligations to Anzures with respect to Industria's financing and ownership or Anzures's compensation.

---

[2] Anzures advanced the breach-of-contract claim as an alternative to his tort claims in the event the economic-loss rule barred them.

10

Because we conclude that defendants do not have the minimum contacts necessary to support the exercise of specific jurisdiction over them in Colorado, we need not determine whether the exercise of personal jurisdiction over them would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (internal quotation marks omitted).

## CONCLUSION

The judgment of the district court is affirmed.