**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 7, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES MANDEVILLE, V,

    Plaintiff - Appellant,

v.

DEBORAH CROWLEY; VICKI L.
PINAK; PINAK LAW FIRM, PLLC,

    Defendants - Appellees.

No. 17-6036
(D.C. No. 5:16-CV-00762-D)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

Plaintiff Charles Mandeville, V, appearing pro se, appeals the district court's

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dismissal of his 42 U.S.C. § 1983 action without prejudice for lack of personal jurisdiction over the named defendants. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

The following facts are alleged in Mandeville's complaint. For purposes of this order and judgment, we will simply assume these alleged facts are true.

In June of 2000, Mandeville married a woman named Deborah Crowley in the State of New Mexico. Approximately a year later, on June 25, 2001, the couple "executed a separate property agreement in New Mexico for the express purpose of opting out of" New Mexico's typical "community property arrangement, and to keep separate their existing and future property interests." Dist. Ct. Docket No. 1 at 2. That document was purportedly "recorded in the Socorro County, New Mexico records on July 20, 2001," and "[n]o attempt has ever been made by either party to alter/amend the agreement." Id.

After executing the separate property agreement, Mandeville "established 2 retirement accounts in his own name." Id. "Crowley contributed nothing to either of those accounts at any time." Id.

"Crowley eventually moved to Texas" and, "on January 17, 2014 filed a divorce proceeding." Id. Crowley hired Texas counsel, Vicki Pinak, and her firm, the Pinak Law Firm, PLLC, to represent her in the divorce proceeding. Id. The divorce petition filed by Crowley "failed to state anything about the separate property agreement" and instead

-2-

"made it appear as if only community property existed." Id. Mandeville "filed a counter-petition, which included a copy of the separate property agreement, for adjudication that [his] property, including his retirement accounts, were [his] separate property." Id.

On the eve of trial, Crowley moved "to exclude any evidence of separate property, especially the separate property agreement . . . on grounds of a purported discovery dispute." Id. at 3. The trial judge granted Crowley's motion. Id. at 4. The trial judge subsequently "awarded 100% of both [of Mandeville's] retirement accounts to" Crowley. Id. A final divorce decree was issued on November 12, 2014. Mandeville unsuccessfully appealed the trial court's judgment.

Pinak, acting on Crowley's behalf, "execute[d] the judgment" and was "successful in having the retirement account administrator turn-over both of [Mandeville's] retirement accounts to . . . Crowley." Id. at 5.

II

On July 5, 2016, Mandeville filed a pro se complaint in the United States District Court for the Western District of Oklahoma naming as defendants Crowley, Pinak, and her law firm. The complaint alleged that the court "ha[d] jurisdiction pursuant to 28 U.S.C. § 1331, § 1343, and 42 U.S.C. § 1983." Id. at 1. The complaint also, citing Mandeville's Oklahoma residency and the defendants' Texas residency, purported to "invoke[] the diversity jurisdiction of th[e] Court under 28 U.S.C. § 1332 for state law claims." Id.

The complaint alleged three causes of action. The first alleged that defendants and

the state trial judge in the divorce proceeding conspired to violate Mandeville's "due process right to actual adjudication of fundamental issues relating to the property claims within the [divorce] proceeding," as well as "the arbitrary deprivation of his due process right to a jury trial under state law relating to these issues." Id. at 5. The second alleged that Crowley breached the terms of the separate property agreement. The third alleged that Pinak and her firm tortiously interfered with the separate property agreement.

Defendants moved to dismiss the complaint for lack of jurisdiction, improper venue, and failure to state a claim. In support of the motion, Crowley and Pinak submitted affidavits that provided facts relevant to the issue of personal jurisdiction. The district court, after affording Mandeville an opportunity to respond to the motion and file his own affidavit, issued an order granting defendants' motion and dismissing Mandeville's complaint without prejudice for lack of personal jurisdiction over the defendants.

The district court entered final judgment on November 30, 2016. Mandeville, after unsuccessfully moving to alter or amend the judgment, filed a notice of appeal.

                                    III

Mandeville now challenges on appeal the district court's dismissal of his complaint for lack of personal jurisdiction over the named defendants. "We review de novo a district court's dismissal for lack of personal jurisdiction over the defendants." Anzures v. Flagship Rest. Grp., 819 F.3d 1277, 1279 (10th Cir. 2016). "Because the district court decided the jurisdictional issue based only on the documentary evidence,

[Mandeville] must only make a prima facie showing of personal jurisdiction." Id. "We must resolve any factual disputes in [Mandeville's] favor." Id.

In addressing the issue of personal jurisdiction, "our analysis begins with two questions." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008). "First, we ask whether any applicable statute authorizes the service of process on defendants." Id. "Second, we examine whether the exercise of such statutory jurisdiction comports with constitutional due process demands." Id.

The only federal statute cited by Mandeville in his complaint, 42 U.S.C. § 1983, does not "provide[] for nationwide service of process." Dudnikov, 514 F.3d at 1070; see Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006). Consequently, we must "follow state law in determining the bounds of [the district court's] jurisdiction over" defendants. Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014). More specifically, we must, as directed by Federal Rule of Civil Procedure 4(k)(1)(A), "apply the law of the state in which the district court sits." Dudnikov, 514 F.3d at 1070. In this case, "Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Okla. Stat. tit. 12, § 2004(F)). Consequently, "the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." Dudnikov, 514 F.3d at 1070.

Our constitutional analysis focuses on whether the named defendants "have 'minimum contacts' with the forum state, such that having to defend a lawsuit there

-5-

would not 'offend traditional notions of fair play and substantial justice.'" Id. (quoting

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "[A] defendant's contacts with

the forum state must be sufficient such that, notwithstanding [his or her] lack of physical

presence in the state, the state's exercise of sovereignty over [him or her] can be

described as fair and just." Id. In addition, "exercising personal jurisdiction over

defendants must always be consonant with traditional notions of fair play and substantial

justice." Id. at 1071 (citing Int'l Shoe, 326 U.S. at 316).

The "minimum contacts" requirement can be met in one of two ways. First, a

court can exercise what is known as general jurisdiction over any claim against a non-

resident defendant if the defendant's "affiliations with the State are so continuous and

systematic as to render [it] essentially at home in the forum State." Goodyear Dunlop

Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Second, a court can exercise

specific jurisdiction over a non-resident defendant if the plaintiff establishes that the

defendant has "purposefully directed its activities at residents of the forum state," and that

the plaintiff's injuries arose out of the defendant's forum-related activities. Dudnikov,

514 F.3d at 1071 (internal quotation marks omitted).

There is no dispute that the district court in this case lacked general jurisdiction

over the defendants named in Mandeville's complaint. Instead, the only question before

us is whether Mandeville established that the district court had specific jurisdiction over

the named defendants. "The inquiry whether a forum State may assert specific

jurisdiction over a nonresident defendant focuses on the relationship among the

-6-

defendant, the forum, and the litigation." Walden, 134 S. Ct. at 1121. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. In determining whether such a connection exists, we "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 1122. That is because "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State," rather than any "random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." Id. at 1123 (internal quotation marks omitted).

The only fact that Mandeville alleges to support specific jurisdiction over the named defendants is that a summons for the Texas divorce case was, presumably at the behest of one or more of the named defendants, served on him in the State of Oklahoma. The district court concluded, and we agree, that this was, at best, an attenuated contact between the defendants and the State of Oklahoma. More specifically, it was a one-time contact between the defendants and a single resident of the State of Oklahoma, i.e., Mandeville, that was designed to notify Mandeville of his duty to appear in the Texas divorce proceeding. Following that contact, all of the remaining suit-related conduct on the part of the defendants occurred in the State of Texas in the context of the divorce proceeding. Moreover, there is no basis in the record for concluding that the injuries allegedly sustained by Mandeville arose out of this single contact in the State of Oklahoma. To the contrary, Mandeville's complaint alleges that the injuries he sustained

occurred because of the actions taken by the defendants in the State of Texas during the course of the divorce proceeding. "In short, defendants' suit-related conduct did not create any meaningful contacts with [Oklahoma] itself, and the fact that [Mandeville] was affected in [Oklahoma] (because he resides there) is insufficient to authorize personal jurisdiction over defendants." Anzures v. Flagship Rest. Grp., 819 F.3d 1277, 1281 (10th Cir. 2016). Thus, we conclude that the act of serving a summons on Mandeville did not create the "substantial connection" between defendants and the State of Oklahoma necessary to afford the district court with specific jurisdiction over defendants.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge